**In re D.K.M.B., INC., d/b/a Shoppin' Sav, Debtor.**

**BLAIR MERRIAM FRESH FRUIT & PRODUCE CO., INC., Plaintiff,**

v.

**H. Christopher CLARK, Trustee/Defendant.**

**Bankruptcy No. 87–B–8012J. Adv. No. 88 C 0316.**

United States Bankruptcy Court, D. Colorado.

Jan. 13, 1989.

Leslie Klein Berg, Harry L. Simon, P.C., Denver, Colo., for Blair Merriam.

H. Christopher Clark, Denver, Colo., pro se.

## ORDER ON MOTION FOR SUMMARY JUDGMENT PAUL B. LINDSEY, Bankruptcy Judge.

Plaintiff herein was a supplier of perishable agricultural commodities to the debtor, which operated retail grocery stores under the trade name Shoppin' Sav. Plaintiff has brought this action under the provisions of the Perishable Agricultural Commodities Act of 1930 ("PACA"), 7 U.S.C. §§ 499a–499s, inclusive. In particular, plaintiff relies upon the provisions of § 499e(c), added by a 1984 amendment. That provision creates a trust upon perishable agricultural commodities and the proceeds from the sale thereof for the benefit of unpaid suppliers, sellers or agents and provides the manner in which beneficiaries may preserve the benefits of the trust, subject in certain respects to regulations issued by the Secretary of Agriculture. *See* 7 C.F.R. §§ 46.1–46.47, inclusive.

Plaintiff seeks a determination that all amounts owed to it for perishable agricultural commodities delivered immediately prior to debtor's bankruptcy, a total of approximately $111,000, are impressed with the statutory trust, are not "property of the estate" of debtor, and, although in the hands of the trustee, should be forthwith delivered to plaintiff free of any claim of debtor, of the trustee, or of any other creditor.

Plaintiff filed its Motion for Summary Judgment, with supporting affidavit and exhibits, asserting that there were no genuine issues of material fact before the court and that plaintiff was entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P., made applicable to this proceeding by Rule 7056, Fed.R.Bankr.P. Defendant conceded that there were no genuine issues of material fact before the court, but contended that defendant, not plaintiff, was entitled to judgment as a matter of law.

At a hearing on the motion, the jurisdiction of this court to resolve the matter was conceded, and no question was raised by defendant as to plaintiff's eligibility for PACA benefits, upon compliance with the notice requirements contained in PACA and the attendant regulations. The parties agreed at the hearing that there were only two questions to be decided by the court. The first was whether the notices given by plaintiff were sufficient to preserve its rights in and to the trust corpus created under 7 U.S.C. § 499e(c). If the court determined that such notices were sufficient for that purpose, it would then be required to determine the amount of the trust corpus, which plaintiff would be entitled to recover.

As in all cases involving the construction of a statute, the court must first look to the language of the statute itself and, in this case, to the language of the regulations duly adopted in accordance with the rule-making authority conferred in the statute.

The text of 7 U.S.C. § 499e(c), in its entirety, is appended to this order as Appendix A and the text of 7 C.F.R. § 46.46, in its entirety, is appended as Appendix B.

Although the trust provisions of 7 U.S.C. § 499e(c) are of relatively recent origin, they have been extensively reviewed, discussed and construed by the bankruptcy courts. *In re Fresh Approach, Inc.,* 51 B.R. 412 (Bankr.N.D.Tex.1985); *In re Monterey House, Inc.,* 71 B.R. 244 (Bankr.S.D. Tex.1986); *In re W.L. Bradley Co., Inc.,* 75 B.R. 505 (Bankr.E.D.Pa.1987).

After analyzing the 1984 PACA amendments and their legislative history, in which the Congress, *inter alia,* directed that courts look to case law under the Packers and Stockyards Act, 7 U.S.C. § 196 ("PSA") [*see* H.R.Rep. No. 98–543, 98th Cong., 1st Sess. 4 (1984), *reprinted in* 1984 U.S.Code Cong. & Admin.News 405, 407], it has been held: That the trust is created upon delivery of the commodities; that the trust is a "floating" trust, which applies to all of the purchaser's produce-related inventory and proceeds regardless of whether the trust beneficiary was the source of the inventory; that the trust beneficiary is not required to trace proceeds; that the purchaser has the burden of showing what products and proceeds, if any, are not appropriately a part of the trust corpus; that the benefits of the trust are lost if not preserved in accordance with the statute and regulations; that if trust benefits are properly preserved, the corpus of the trust is not "property of the estate" under 11 U.S.C. § 541; and that a beneficiary who has properly preserved his rights under the statutory trust is entitled to immediate possession of the corpus of the trust, irrespective of the importance of the same to the debtor in effectuating a plan of reorganization or for any other purpose. *Fresh Approach; Monterey House; Bradley, supra.*

At the hearing on the motion for summary judgment, it was noted that the facts in this case differ from those in any of the previously decided cases under this provision. This case, unlike those cited above, involves a purchaser of perishable agricultural commodities which is a seller of both perishable and nonperishable products. Thus, plaintiff is asking this court to apply the "floating" trust concept to a fund which consists of the proceeds of the sale of perishable agricultural commodities, and of a variety of other products as well. The extremely harsh effect of such application upon suppliers of other products and commodities, who would otherwise share ratably with all other suppliers, as unsecured creditors, is particularly apparent in this case, where the trustee holds a fund of approximately $150,000, of which plaintiff claims approximately $111,000. If plaintiff has properly preserved its rights under the statutory trust, and if the amount claimed can be substantiated, its claim would be satisfied "off the top," and the remaining unsecured creditors would be left to share the substantially reduced amount in the hands of the trustee, after satisfaction of administrative and other priority claims in the bankruptcy. It is argued that, particularly in circumstances such as are present here, the Congress did not intend such an allegedly inequitable result.

Before addressing such issues, which appear to involve more policy than judicial considerations, the court must address the question of whether plaintiff in this case has properly preserved the benefits accorded by the 1984 PACA amendments.

Plaintiff asserts in its motion for summary judgment that trust benefits were properly preserved by timely providing the appropriate notice, to the debtor and to the Secretary of Agriculture. In the affidavit of Michael Landers, the General Manager of plaintiff, submitted as Exhibit A to the Motion for Summary Judgment, it is asserted: "That notice of Blair Merriam's intent to preserve trust benefits under PACA was sent to DKMB and to the Secretary of the U.S. Department of Agriculture on July 13, 1987 (by certified letter) and July 7, 1987 (by Federal Express) respectively by Blair Merriam." Following that statement is a reference to Exhibits I and F, which are exhibits to the Motion for Summary Judgment, and not to the Affidavit.

Exhibit I is a letter on plaintiff's corporate letterhead which is, in its entirety, as follows:

July 13, 1987

Shoppin' Sav Stores
9345 Elm Court
Federal Heights, Co. 80221
Dear Mr. Jim Dean:

This letter serves as notice to the Shoppin' Sav stores that Blair Merriam Fresh Fruit and Produce Co., Inc., intends to preserve trust benefits under the Perishable Agricultural Commodities Act. The

United States Department of Agriculture, PACA Branch in Ft. Worth, Tx. was notified on July 8, 1987 as a result of your refusal to pay the total amount owed by the Shoppin' Sav Stores of Blair Merriam Fresh Fruit and Produce Co., Inc.

Sincerely,
s/Blair J. Merriam
Blair J. Merriam
President

Exhibit F is also a letter on plaintiff's corporate letterhead which is, in its entirety, as follows:

BY FEDERAL EXPRESS

July 7, 1987

Mr. Byron White
United States Department of Agriculture
PACA Branch
819 Taylor Street
Room 8B08
Ft. Worth, Tx. 76102
Dear Mr. White:

Consider this letter as the notice of Blair Merriam Fresh Fruit & Produce Co., Inc. to protect our assets under the trust provisions of the PACA. The Shoppin' Sav Grocery Stores (dba DKMB, Inc.) were buying fresh fruit and produce from Blair Merriam, but as of Monday July 6, 1987 the stores have ceased ordering from any supplier and have refused to make any payments. Payment terms were seven days. Enclosed are copies of statements showing the outstanding invoices through June 30, 1987 for the three Shoppin' Sav stores in Longmont, Federal Heights, and [sic] Also included is a summary of those invoices dated July 1, through July 3, 1987. The total amount owing Blair Merriam Fresh Fruit & Produce Co., Inc. is $114,-101.35. By separate letter I will send you copies of each of the unpaid invoices. Please contact me if you have any questions about these matters.

Sincerely,
s/Michael Landers
Michael Landers
Manager

file (paca.77)

Immediately prior to the hearing on the Motion for Summary Judgment, and without seeking or obtaining leave of court to do so, plaintiff filed the Affidavit of Bill Kerst. The preparation and filing of this affidavit was apparently, at least in part, in recognition of possible shortcomings in the documentation of the notices provided by plaintiff to debtor and to the Secretary of Agriculture.

In his affidavit, Mr. Kerst describes himself simply as an employee of plaintiff and states that he "hand delivered copies of all outstanding, unpaid invoices due from D.K. M.B., d/b/a Shoppin' Sav to the Shoppin' Sav store at their main office at 9345 Elm Court, Federal Heights, Colorado, 80221, on July 14, 1987." Mr. Kerst continues to the effect that true and correct copies of all of the invoices hand delivered by him are included in Affidavit Exhibit 1 to the Motion for Summary Judgment, and that also delivered by him were summaries of the invoices and total amounts due, copies of which are attached to Mr. Kerst's affidavit.

As the court pointed out to counsel at the hearing, the "invoices" attached to the affidavit of Michael Landers, as Affidavit Exhibit 1, could not be characterized as invoices under even the loosest possible definition of the term. In fact, these items were rough, hand-written delivery receipts provided by plaintiff's truck driver to whoever was responsible to accept deliveries at the three DKMB stores. Although the delivery receipts provided space for individually listing specific quantities of a large number of fruits, vegetables and produce items, in the great majority of those submitted with Mr. Landers' affidavit, no such detail is provided, there being simply a reference to a numbered purchase order and a gross dollar amount with, in some instances, hand-written credits for specific items which were either "out" or "short." Of the 68 delivery receipts accompanying the affidavit, 44 provide little or no detail and 24, most of which relate to credits, provide a detailed listing of products. Although space is provided on the form for the pricing of each individual product, prices are

actually provided only when a credit is being given or when the item is being added to a previously totaled purchase order.

In a letter apparently written in response to a request by debtor's counsel, the Branch Chief of the PACA Branch, Fruit and Vegetable Division, Department of Agriculture, Washington, D.C., advised that of the $114,101.35 claimed by plaintiff, $1,439.50 was not timely filed and $1,291.75 was for non-perishable commodities. [Exhibit G to Motion for Summary Judgment]. Thus, this officer stated that it appeared that $111,355.60 of the total "qualifies for trust protection." This statement provides no basis for determining what the officer believed constituted non-perishable commodities. Further, plaintiff did not contend that it provided exclusively perishable commodities to debtor. The court thus advised counsel that it was unable to determine what portion, if any, of the unspecified delivery receipt amounts were entitled to trust protection.

Both parties agreed that the matter should be decided on the Motion for Summary Judgment and that no further trial should be necessary. In view of the court's concerns with regard to the identification of the commodities sold and delivered, plaintiff was given the opportunity to submit, within ten days after the hearing, any supporting data which had been prepared contemporaneously with the delivery receipts and which would provide support and detail for the otherwise unspecified purchase orders.

Plaintiff thereafter timely filed the affidavit of Blair Merriam, President of plaintiff, accompanied by exhibits. In his affidavit, Mr. Merriam describes the generation of purchase orders by purchasers through the medium of computer modems, the review of computer printouts (hard copies) by plaintiff's salesmen to determine the availability of items ordered, the preparation of delivery receipts by the salesmen, the adjustment as necessary to the delivery receipts by warehousemen during loading and before shipment and the delivery of the delivery receipt to personnel of the buyer upon delivery of the order.

Accompanying the affidavit are each of the delivery receipts attached to Affidavit Exhibit 1 and the computer printout purchase order from which each delivery receipt was prepared. Thus, at that juncture, the court had before it sufficient information with which to determine the amount subject to trust protection, if in fact trust protection was properly preserved.

Under 7 U.S.C. § 499e(c)(3) [see Appendix A], in order to avoid losing the benefits of the PACA trust, plaintiff was required to give written notice of its intent to preserve the benefits of the trust "to the commission merchant, dealer, or broker" [here, debtor. See Exhibits C and G to Motion for Summary Judgment] and to file such notice with the Secretary of Agriculture within the time period provided in the statute.

In the regulations promulgated by the Secretary of Agriculture under PACA, specifically, 7 C.F.R. § 46.46(g) [see Appendix B], the manner in which such notice must be given is spelled out. As is made clear in § 46.46(g)(3), an appropriate notice must be in writing, must state that it is a notice of intent to preserve trust benefits and must include information which establishes for each shipment: The name and addresses of the seller and the debtor; the date of the transaction, commodity, contract terms, invoice, price and the date payment was due; and the amount past due and unpaid.

■ The notices given to debtor and filed with the Secretary of Agriculture in this case did not comply with these requirements. The July 13 letter from plaintiff to debtor contains the statement that it is a notice of plaintiff's intent to preserve trust benefits and, arguably at least, contains the names and addresses of both the seller and buyer, although only the trade name employed by debtor, and not its corporate name, is included. No reference or other mention, however, is made of the date of the transaction, the commodity, the contract terms, the invoice, the price or the date payment was due. [Exhibit I to Motion for Summary Judgment].

The affidavit of Bill Kerst, belatedly filed immediately prior to the hearing, was obvi-

ously intended to provide the missing information. As is noted above, Mr. Kerst asserts that he delivered copies of all of the "invoices," true and correct copies of which are said to have been included as Affidavit Exhibit 1 to the Affidavit of Michael Landers. As this court has pointed out, however, these "invoices" were simply delivery receipts, the majority of which bore only gross amounts and little or no detail as to what commodities were ordered or delivered. The only information provided by these delivery receipts was the date of the transaction and the gross price for all items delivered.

Similarly, the notice filed with the Secretary of Agriculture recites that it encloses only statements showing the outstanding invoices and a summary of those invoices dated July 1 through July 3, 1987. The letter concludes by stating that copies of each of the unpaid invoices would be provided by separate letter. No evidence was presented that the same were ever provided. In any event, in view of plaintiff's assertion that the delivery receipts constituted invoices, it is doubtful that the information required by § 46.46(g)(3) would have been provided in any event.

Counsel for plaintiff argues, in effect, that debtor knew what it had ordered and what it received and that it had all the notice it needed. Counsel argues that plaintiff was in substantial compliance with the regulations and that substantial compliance should be treated as compliance, given the Congressional intent behind the 1984 amendments to PACA. That intent was clearly to protect suppliers of perishable agricultural commodities from purchasers who fail or refuse to pay for those commodities. Obviously, the security of suppliers selling other than on a cash-on-delivery basis is negligible by reason of the perishable nature of the commodities themselves.

Counsel apparently does not consider the importance of the Congressional intent behind the Bankruptcy Code, which is to provide an orderly, fair and equitable distribution of a debtor's assets among its creditors. The application of the 1984 PACA amendments in this case would effectively prevent the equitable distribution of debtor's assets among its creditors. The vast majority of the funds in the hands of the trustee would be turned over to plaintiff, without regard to whether such funds were generated through the sale of products provided by plaintiff, and without regard to the claims of other creditors.

The substantial impact of the application of the 1984 PACA amendments upon other creditors of a debtor convinces this court that strict compliance with the notice provisions of the regulations recited above should be required. As the court observed in *In re Marvin Properties, Inc.*, 854 F.2d 1183 (9th Cir.1988), the language of § 499e(c)(3) is unambiguous on its face. The same is true of § 46.46(g)(3). Although here, unlike the facts in *Marvin*, the creditor gave notice directly to the debtor, that notice did not contain the information required by the regulations in order for it to be an "appropriate" notice. Neither did the notice filed with the Secretary of Agriculture contain the required information.

It is this court's view that the notices given in this case cannot be found to constitute "substantial compliance" with the statute and the regulations. Further, even if the court could find "substantial compliance," it is of the view that the Draconian impact of the 1984 PACA amendments upon the other creditors of this, or any other, debtor, militates strongly against a determination that anything less than strict compliance should be acceptable to preserve the PACA trust benefits.

In view of the foregoing, the Motion for Summary Judgment filed herein by plaintiff will be denied. The court having found that the notices provided and filed by plaintiff herein were inadequate to preserve the trust benefits created by the 1984 PACA benefits, judgment will be entered in favor of defendant and against plaintiff, the parties to bear their own costs.

### APPENDIX A

7 U.S.C. § 499e. Liability to persons injured.

\*    \*    \*    \*    \*    \*

(c) Trust on commodities and sales proceeds for benefit of unpaid suppliers, sellers, or agents; preservation of trust; jurisdiction of courts

(1) It is hereby found that a burden on commerce in perishable agricultural commodities is caused by financing arrangements under which commission merchants, dealers, or brokers, who have not made payment for perishable agricultural commodities purchased, contracted to be purchased, or otherwise handled by them on behalf of another person, encumber or give lenders a security interest in, such commodities, or on inventories of food or other products derived from such commodities, and any receivables or proceeds from the sale of such commodities or products, and that such arrangements are contrary to the public interest. This subsection is intended to remedy such burden on commerce in perishable agricultural commodities and to protect the public interest.

(2) Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents. Payment shall not be considered to have been made if the supplier, seller or agent receives a payment instrument which is dishonored. The provisions of this subsection shall not apply to transactions between a cooperative association (as defined in section 1141j(a) of Title 12), and its members.

(3) The unpaid supplier, seller, or agent shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker and has filed such notice with the Secretary within thirty calendar days (i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary, (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction, or (iii) after the time the supplier, seller, or agent has received notice that the payment instrument promptly presented for payment has been dishonored. When the parties expressly agree to a payment time period different from that established by the Secretary, a copy of any such agreement shall be filed in the records of each party to the transaction and the terms of payment shall be disclosed on invoices, accountings, and other documents relating to the transaction.

(4) The several district courts of the United States are vested with jurisdiction specifically to entertain (i) actions by trust beneficiaries to enforce payment from the trust, and (ii) actions by the Secretary to prevent and restrain dissipation of the trust.

(As amended May 7, 1984, Pub.L. 98–273, § 1, 98 Stat. 165).

## APPENDIX B

7 C.F.R. § 46.46 Statutory trust.

(a) *Scope.* The requirements of this section cover all transactions existing as of and entered into on or after the effective date of these regulations which have been issued pursuant to Pub.L. 98–273.

(b) *Definitions.* (1) "Received" means the time when the buyer, receiver, or agent gains ownership, control, or possession of the perishable agricultural commodities: *Provided,* That when perishable agricultural commodities have not been received as described above, and where there is a rejection without reasonable cause as provided in § 46.2(bb) and (cc), the goods will be considered to have been received when proffered.

(2) "Dissipation" means any act or failure to act which could result in the diver-

sion of trust assets or which could prejudice or impair the ability of unpaid suppliers, sellers, or agents to recover money owed in connection with produce transactions.

(3) "Default" means the failure to pay promptly money owed in connection with transactions in perishable agricultural commodities: *i.e.*, within the period of time applicable to the type of transaction as established by the provisions of the regulations (§ 46.2(aa)), or as otherwise agreed upon by the parties.

(4) "Calendar days" as used in section 5(c)3 of the Act means every day of the week, including Saturdays, Sundays, and holidays, except that if the thirtieth calendar day falls on a Saturday, Sunday, or holiday, the final day with respect to the time for filing a written notice of intent to preserve the benefit of the trust shall be the next day upon which there is postal delivery service.

(c) *Trust assets.* The trust is made up of perishable agricultural commodities received in all transactions, all inventories of food or other products derived from such perishable agricultural commodities, and all receivables or proceeds from the sale of such commodities and food or products derived therefrom. Trust assets are to be preserved as a nonsegregated "floating" trust. Commingling of trust assets is contemplated.

(d) *Trust benefits.* (1) When a seller, supplier or agent who has met the eligibility requirements of paragraphs (f)(1) and (2) of this section transfers ownership, possession or control of goods to a commission merchant, dealer or broker, it automatically becomes eligible to participate in the trust. Participants who preserve their rights to benefits in accordance with paragraph (g) of this section remain beneficiaries until they are paid in full.

(2) Commission merchants, dealers, and brokers acting on behalf of others have the duty to preserve their principals' rights to trust benefits by filing timely written notice with their customers and with the Secretary in accordance with paragraph (g) of this section. The responsibility for filing the notice to pro-

tect the principals' rights is obligatory and cannot be avoided by the agent or receiver by means of a contract provision. Persons acting as agents also have the responsibility to negotiate contracts which entitle their principals to the protection of the trust provisions: *Provided,* That a principal may elect to waive its right to trust protection. To be effective, the waiver must be in writing and separate and distinct from any agency contract, must be signed by the principal prior to the time affected trading contracts are negotiated, must clearly state the principal's intent to waive its right to become a trust beneficiary on a given transaction, or a series of transactions, and must include the date the agent's authority to act on its behalf expires. In the event an agent fails to perform the duty of protecting its principal's rights to trust benefits, it may be held liable to the principal for damages. The principal must preserve its rights to trust benefits by filing appropriate notices with the agent and/or the buyer and the Secretary in accordance with paragraph (g) of this section.

(e) *Trust maintenance.* (1) Commission merchants, dealers, and brokers are required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities. Any act or omission which is inconsistent with this responsibility, including dissipation of trust assets, is unlawful and in violation of section 2 of the Act, (7 U.S.C. 499b).

(2) Agents who sell perishable agricultural commodities on behalf of a principal are required to preserve the principal's rights as a trust beneficiary as set forth in § 46.2(z), (aa) and paragraphs (d), (f) and (g) of this section. Any act or omission which is inconsistent with this responsibility, including failure to give timely notice of intent to preserve trust benefits, is unlawful and in violation of section 2 of the Act, (7 U.S.C. 499b).

(f) *Prompt payment and eligibility for trust benefits.* (1) The times for prompt accounting and prompt payment are set out in § 46.2(z) and (aa). Parties

who elect to use different times for payment must reduce their agreement to writing before entering into the transaction and maintain a copy of their agreement in their records, and the times of payment must be disclosed on invoices, accountings, and other documents relating to the transaction.

(2) The maximum time for payment for a shipment to which a seller, supplier, or agent can agree and still qualify for coverage under the trust is 30 days after receipt and acceptance of the commodities as defined in § 46.2(dd) and paragraph (b)(1) of this section.

(3) The trust provisions do not apply to transactions between a cooperative association (as defined in section 15(a) of the Agricultural Marketing Act (12 U.S.C. 1141j(a)), and its members.

(4) The amount claimable against the trust by a beneficiary or grower will be the net amount due after allowable deductions or contemplated expenses or advances made in connection with the transaction by the commission merchant, dealer, or broker.

(g) *Filing notice of intent to preserve trust benefits.* (1) Notice of intent to preserve benefits under the trust must be in writing, given to the debtor, and filed with the Secretary within 30 calendar days:

(i) After expiration of the time prescribed by which payments must be made pursuant to regulation.

(ii) After expiration of such other time by which payment must be made as the parties have expressly agreed to in writing before entering into the transaction, but not longer than the time prescribed in paragraph (f)(2) of this section, or

(iii) After the time the supplier, seller or agent has received notice that a payment instrument promptly presented for payment has been dishonored.

Failures to pay within the time periods set forth in paragraph (g)(1)(i) and (ii) of this section constitute defaults.

(2) Timely filing of a notice of intent to preserve trust benefits by a trust beneficiary will be considered to have been made if written notice is given to the debtor and filed with the Secretary by delivery at the headquarters office or a regional office of the P.A.C.A. Branch of the Fruit and Vegetable Division, Agricultural Marketing Service, within 30 calendar days after default as described above in paragraph (b)(3) of this section.

(3) An appropriate notice of intent to preserve trust benefits must be in writing, must include the statement that it is a notice of intent to preserve trust benefits, and must include information which establishes for each shipment:

(i) The name and addresses of the trust beneficiary, seller-supplier, commission merchant, or agent and the debtor, as applicable.

(ii) The date of the transaction, commodity, contract terms, invoice, price, and the date payment was due,

(iii) The date of receipt of notice that a payment instrument has been dishonored (if appropriate),

(iv) The amount past due and unpaid. (Sec. 1, 46 Stat. 531, as amended; 7 U.S. C. 499a et seq) [49 FR 45740, Nov. 20, 1984].