**In re LOMBARDO FRUIT AND PRODUCE COMPANY, Debtor.**

**TOM LANGE COMPANY, INC., and Pupillo Brokerage Company, Plaintiffs,**

**v.**

**LOMBARDO FRUIT AND PRODUCE COMPANY and Uni–Fin Corp., Defendants.**

**Bankruptcy No. 89–01101–BSS.**

**Adv. No. 89–0177–BSS.**

United States Bankruptcy Court, E.D. Missouri, E.D.

Nov. 9, 1989.

Steven H. Kerbel, Silver Springs, Md., Richard A. Ahrens, David Rubin, St. Louis, Mo., for Tom Lange Co. and Pupillo Brokerage Co.

Scott A. Greenberg, Clayton, Mo., for Gary Lombardo.

David A. Sosne, Clayton, Mo., Trustee.

Jerome I. Kaskowitz, Clayton, Mo., for Uni–Fin Corp.

Jeffrey Blumenthal, Chicago, Ill., for Uni–Fin Corp.

## MEMORANDUM OPINION AND ORDER

BARRY S. SCHERMER, Bankruptcy Judge.

## INTRODUCTION

On July 17, 1989, Plaintiff, Pupillo Brokerage Company (hereinafter "Pupillo"), filed an Adversary Complaint seeking to preserve and enforce trust benefits as an unpaid broker of perishable agricultural commodities under the Perishable Agricultural Commodities Act (hereinafter "PACA"), 7 U.S.C. § 499a et seq. Defendant, Uni–Fin Corporation (hereinafter "Uni–Fin"), holds a first, perfected security interest in all of the Debtor's accounts receivable and proceeds. Uni–Fin filed a Motion For Summary Judgment, claiming that Pupillo failed to comply with the requirements necessary to preserve trust benefits under the PACA statute. This Opinion shall address Uni–Fin's Motion for Summary Judgment.

## JURISDICTION

This Court has jurisdiction over the subject matter of the proceeding pursuant to 28 U.S.C. §§ 151, 157, 1334 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" which the Court may hear and determine pursuant to 28 U.S.C. § 157(b)(2)(B).

## FACTS

Between November 17, 1988 and February 8, 1989, Pupillo sold $146,192.35 of produce to the Defendant Debtor (hereinafter "Lombardo"), for which it has not received payment. Pupillo does not dispute Uni–Fin's assertion that: 1) throughout this period Uni–Fin held a first perfected security interest in all of Lombardo's accounts receivable and derivative proceeds, and 2) Uni–Fin gave substantial value for each account receivable it financed.

On June 22, 1988, Eldoras Pupillo, on behalf of Pupillo, and the President of Lombardo entered into a letter agreement which stated that the parties' payment terms were "net 30 days from the date set forth on the respective Pupillo invoice". Defendant's Exhibit 3. All of the invoices for produce sold by Pupillo to Lombardo had a similar format, each setting forth the file number, date of produce shipment, carrier designation, invoice number, and the invoice date. The "carrier designation", serving as a Freight on Board or "FOB" term, determined who would bear the cost of shipment to Lombardo's business premises, who bore the risk of loss until the goods arrived, and most importantly, when Lombardo "accepted" the goods. Usually, the invoices set forth the name of the carrier, meaning that Pupillo was responsible for the cost of shipping the produce to Lombardo. In such a case, Lombardo would not be deemed to have accepted the produce until Lombardo received it at its place of business. However, when Pupillo designated the customer as a carrier, the transaction constituted a "shipment contract" on which the customer, Lombardo, was deemed to have accepted the produce when Pupillo tendered it at Pupillo's place of business.

The "invoice date" represented both the date Pupillo filled out the invoice and the date they sent the invoice to the customer. Under the parties' letter agreement Lombardo had thirty days from date of invoice to make payment to Pupillo for the respective transaction. Lombardo received produce from Pupillo between one and four days prior to receipt of the applicable invoice, except for five of the thirty-nine transactions in question (with a total unpaid balance of $21,331.20), where the invoice date preceded the date of acceptance.

Throughout their business relationship, Pupillo sent Lombardo invoices for each delivery. Beginning with the first transaction in question (invoice number 2210, dated November 29, 1988), Pupillo placed the

following legend at the bottom of its invoice:

> TERMS: DELIVERED AS TO PRICE. FOB AS TO TERMS. PAYMENT TERMS 21 DAYS NET FROM DATE OF INVOICE. ALL SALES SUBJECT TO PACA TRUST REGULATION.

This legend appeared on all invoices issued after November 29, 1988 for the remainder of the transactions between the parties. Although clearly in conflict with the terms of payment stated in the letter agreement between Pupillo and Lombardo, Eldoras Pupillo stated in her deposition the thirty day terms agreed upon in her June 22, 1988 letter to Lombardo controlled over the twenty-one day legend, which was pre-printed and standard on all of Pupillo's invoices. *See infra* page 658. Ms. Pupillo further stated that all three of Pupillo's necessary "decision-makers" agreed that the terms between Pupillo and Lombardo were net thirty days from the date of invoice. *See infra* page 659.

Upon notification of Lombardo's intent to cease active operations, Pupillo notified Lombardo of its intent to preserve PACA trust benefits on February 10, 1989. Pupillo filed their first Notice of Intent to Preserve Trust Benefits (hereinafter "Notice") with the Secretary of Agriculture (hereinafter the "Secretary") on February 15, 1989. On February 13, 1989, Pupillo served Lombardo with its second Notice, which it subsequently filed with the Secretary on February 21, 1989. Pupillo's third and final Notice, dated February 17, 1989, reiterated certain information contained on the second Notice, but added a column entitled "Date Check Dishonored". This column related to checks Pupillo received on the invoices listed on the second Notice which were subsequently returned for insufficient funds. The parties are in dispute as to the sufficiency of the Notices in light of the enumerated PACA requirements.

Uni–Fin contends that as a matter of law Pupillo has not complied with prerequisites necessary to seek statutory protection of its trust benefits under the Perishable Agricultural Commodities Act (PACA), 7 U.S.C. § 499a et seq. More specifically, Uni–Fin argues that all but five of the

parties' transactions in question exceeded the thirty day payment period permitted in 7 U.S.C. § 499e(c)(3)(ii). Therefore, Uni–Fin prays that this Court grant its Motion for Summary Judgment. Pupillo argues that sufficient factual disputes exist as to the parties' payment terms to warrant a full trial of this case. Thus, Pupillo asserts that this Court is precluded from granting Uni–Fin's Motion For Summary Judgment.

## DISCUSSION

### I. APPROPRIATENESS FOR SUMMARY JUDGMENT

Before reaching the merits, this Court must determine whether this case is appropriate for summary judgment. Rule 56(c) of the Federal Rules of Civil Procedure states, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Interpreting the above language, the United States Supreme Court held that Rule 56(c) mandates the entry of summary judgment where, after adequate time for discovery and upon motion, the movant demonstrates the undisputed facts through the record, and the non-moving party fails to establish an essential element of their case on which they bear the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The Court went on to state that failure to prove an essential element of the case necessarily renders all other facts immaterial. *Id.* at 323, 106 S.Ct. at 2552.

The Eighth Circuit has commented upon the Supreme Court's *Celotex* holding in numerous decisions. In *City of Mt. Pleasant, Iowa v. Associated Elec. Coop.*, 838 F.2d 268, 273–74 (8th Cir.1988), the court stated:

> In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d [265] (1986), the Supreme Court held that the burden on the party moving for summary judgment is only to demonstrate, *i.e.*, "[to] point[ ] out to the District Court,"

*id.* 106 S.Ct. at 2554, that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). If the respondent fails to carry that burden, summary judgment should be granted.

*See also Osborn v. E.F. Hutton & Co., Inc.,* 853 F.2d 616, 618 (8th Cir.1988); *Hegg v. United States,* 817 F.2d 1328, 1331 (8th Cir.1987). Thus, under *Celotex* and *City of Mt. Pleasant,* a court must grant summary judgment when the non-movant fails to prove a material element on which he carries the burden.

*Celotex* and *City of Mt. Pleasant* make it clear that this case is appropriate for summary judgment. Pupillo has argued that this Court is precluded from ruling on Uni–Fin's Motion for Summary Judgment because of the parties' dispute as to the payment terms applicable to this case. However, neither party disputes the fact that Pupillo set forth payment terms of "thirty days from invoice date" in its letter dated June 22, 1988. Nor does either party dispute the fact that from the first transaction in question a legend appeared at the bottom of Pupillo's invoices stating that payment terms were "21 days net from date of invoice." Thus, the only issue in this case is whether the twenty-one day payment terms alter the prior thirty day terms to which the parties agreed in writing. Given the entirely legal nature of the issue, this Court deems this case entirely appropriate for summary judgment.

## II. COMPLIANCE WITH THE PACA STATUTE

### A. Terms Of Payment Under The Statute

Parts (c)(2) and (c)(3) of 7 U.S.C. § 499e provide, in pertinent part:

(2) Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents. Payment shall not be considered to have been made if the supplier, seller, or agent receives a payment instrument which is dishonored. The provisions of this subsection shall not apply to transactions between a cooperative association (as defined in section 1141j(a) of Title 12), and its members.

(3) The unpaid supplier, seller, or agent shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker and has filed such notice with the Secretary within thirty calendar days (i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary, (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction, or (iii) after the time the supplier, seller, or agent has received notice that the payment instrument promptly presented for payment has been dishonored. When the parties expressly agree to a payment time period different from that established by the Secretary, a copy of any such agreement shall be filed in the records of each party to the transaction and the terms of payment shall be disclosed on invoices, accounting, and other documents relating to the transaction.

Thus, under § 499e(c)(3) a produce seller has a given time in which he is to receive

payment from the buyer, determined either by statute or the parties' agreement. If the seller fails to receive such payment in that time period, he must notify the buyer of his intent to preserve PACA trust benefits and file such notice with the Secretary of Agriculture within thirty days after the time 1) set forth by the Secretary, 2) agreed upon in writing by the parties, or 3) the seller discovers that his promptly presented check has been dishonored.

### B. The Terms Of The Payment Agreement Between The Parties

Pupillo has argued that pursuant to §§ 400.2–207(1) and (2) R.S.Mo. the parties' terms of payment were net twenty-one days from invoice date (as stated on the invoice) rather than the net thirty days agreed upon in Pupillo's June 22, 1988 letter. Sections 400.2–207(1) and (2) R.S.Mo. provide that:

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) the offer expressly limits acceptance to the terms of the offer;

(b) they materially alter it; or

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

Thus, under § 400.2–207(1) and (2) R.S.Mo. a party's failure to object to additional contract terms allows such terms to become part of the parties' agreement, unless 1) the offer prohibits additional terms, 2) the terms materially alter the prior agreement, or 3) the recipient objects to the terms within a reasonable time after learning of them.

Pupillo contends that because Lombardo failed to object to the terms contained in the legend, which appeared after the original thirty day payment period described in Pupillo's June 22, 1988 letter, the twenty-one day period now represents the payment terms of the parties. Based on the uncontroverted testimony of Ms. Pupillo in her deposition, however, this Court need not reach the merits of Pupillo's § 400.2–207 R.S.Mo. argument. In her deposition, Ms. Pupillo was asked and answered the following questions regarding the legend appearing at the bottom of Pupillo's invoices:

Q. Underneath that it says payment terms, twenty-one days net from date of invoice, right?

A. Correct.

Q. Are those the terms that relate to the sales to Lombardo?

A. No.

Q. The terms for Lombardo are thirty days from the date of invoice, correct?

A. Correct.

Q. And the invoice date again is in the upper right-hand corner of the invoice, right?

A. Correct.

Q. And so when it says payment terms twenty-one days net from date of invoice on each of the invoices, that's a mistake, isn't it?

A. It's a standard form. That's for— that's just a standard form on the invoice. We have PACA letters with all of our customers, and that's what we go by with each individual customer, not what's on the invoice.

Q. Okay. It isn't the terms that you have with Lombardo, isn't that correct?

A. That's correct.

Q. But it's there anyway on the invoice?

A. It's pre-printed on the invoice, yeah. It's standard.

Pupillo Dep. at 95–96.

With respect to the credit terms agreement, Ms. Pupillo was asked and testified as follows at pages 34–36 of her deposition:

Q. ... Directing your attention to the first sentence of the second paragraph

of Exhibit 3 which states, "We hereby confirm that our produce sales terms with you are net thirty days from invoice date." Do you see that?

A. Yes.

Q. Ms. Pupillo, pursuant to Exhibit 3 Lombardo had thirty days from the invoice date set forth on a Pupillo invoice to pay Pupillo for the products sold to Lombardo as listed on the invoice, correct?

A. Correct.

Q. Now, the purpose of the original of Exhibit Number 3 was to set forth the time in which Lombardo was to pay for product which Lombardo purchased from Pupillo's; is that correct?

A. Correct.

Q. Now, there looks like in that sentence that I've just read there was a change made on the document. You see where the thirty is, there is an initial ESP?

A. Correct.

Q. Those are your initials, is that correct?

A. Correct.

Q. The thirty, it looks like something was underneath it and was whited out, and thirty was put in there?

A. Correct.

Q. Okay. Now, let me ask you, was that change made before or after the letter was returned to Pupillo, assuming that the letter was returned to Pupillo by Lombardo's?

A. It was made before it went to Lombardo's.

Q. Okay. Now, what did it say prior to the time it was whited out, if you know?

A. There was a twenty-one.

Q. When was it—was that your—how do you know it was twenty-one days?

A. That's the standard letter. The standard letter is twenty-one days.

Q. And this is not the standard letter; is that correct?

A. This is a standard letter that I changed to thirty days.

Q. Why is it you changed it to thirty days from invoice date?

A. Because that was the agreement as far as the invoices, as far as his payment.

    *     \*     \*     \*     \*     \*

Q. And it was your understanding that the payment terms are thirty days from the invoice date?

A. Correct. And agreed to it.

Q. And you agreed to it, and Tom Pupillo also agreed to it?

A. Correct.

Q. So, all of the three head honchos of the company agreed to it; is that correct?

A. Right. We have other people also we have the same agreement with.

The above testimony of Ms. Pupillo amply indicates that the payment terms between Pupillo and Lombardo were "net thirty days after invoice date" rather than twenty-one, as originally claimed by Pupillo. In short, there is no factual dispute as to the parties' payment terms which could preclude this Court from ruling on Uni–Fin's Motion for Summary Judgment. Thus, the only issue remaining is whether the parties' thirty day payment terms will allow Pupillo to preserve its PACA trust benefits.

    C.  The Impact Of PACA On The Parties' Payment Arrangements

Under 7 U.S.C. § 499e(c)(3)(ii) an unpaid seller must notify the produce buyer of the seller's intent to preserve its PACA trust benefits within thirty days after the payment date which "the parties have expressly agreed to in writing before entering into the transaction". The applicable regulation further states that the maximum payment period on which a buyer and seller may agree is "30 days after the buyer's *receipt and acceptance of the commodity*." 7 CFR 46.46(f)(2). (emphasis added). Further explaining this Regulation, the Federal Register states:

Congress directed the Secretary [of Agriculture] to establish the maximum time by which the parties to a transaction can agree payment must be made and still

qualify for coverage under the trust. An agreement for payment after such time will not qualify for trust coverage.

Current payment practices, as reflected by administrative experience and industry sources, indicate that contracts calling for payment within 30 days from receipt and acceptance of the goods should qualify for trust coverage, and that contracts that call for later payment should not qualify 'for trust coverage. *Therefore, as set forth in § 46.46(f)(2), if an agreement calls for payment 31 days or more after receipt and acceptance of the goods, the trust provisions will not apply to that transaction.*

49 Fed.Reg. 45735, 45738 (1984) (emphasis added).

The absoluteness of the thirty day limitation on terms of payment agreements is further evidenced in the following quote from the statute's legislative history:

> Under the bill [establishing the requirements for a PACA trust], the Secretary is required to establish, through rulemaking, the time by which a transaction must be made, to qualify it for coverage under the trust. *An agreement for payment after such time will not be eligible to receive the benefits of the trust.*

H.R. 543, 93rd Cong.2d Sess. 7, *reprinted in* 1984 *U.S.Code Cong. & Admin.News* 405, 410 (emphasis added).

■ Thus, both the statute's regulations and legislative history strongly indicate that the parties may extend their terms of payment through prior written agreement no more than thirty days from the date of produce *delivery and acceptance.* Bankruptcy Court decisions have recognized the strictness of this requirement. *In re D.K. M.B.,* 95 B.R. 774, 779 (Bankr.D.Colo.1989). Given both the statutory and legal precedent, this Court concludes that in order to preserve its PACA trust benefits under 7 U.S.C. § 499e(c)(3)(ii), Pupillo must prove that it strictly complied with 7 U.S.C. § 499e(c)(3)(ii).

In the instant case the parties established payment terms in which Lombardo would pay Pupillo net thirty days of the *invoice* date. In all but five transactions in question Lombardo received and accepted its produce at a date prior to that listed on the invoice. Thus, by definition, in all but five cases Lombardo and Pupillo agreed to payment terms in *excess* of thirty days from the date of produce acceptance, in contravention of 7 U.S.C. § 499e(c)(3)(ii). In sum, the method by which Pupillo and Lombardo structured their payment schedule has proven fatal to Pupillo's attempted preservation of its PACA trust benefits. In fact, the frailty of the parties' payment structure is evidenced in Pupillo's Memorandum in Opposition to Summary Judgment, where Pupillo stated:

> It is apparent that the parties contracted with an. eye towards the PACA trust provisions. They clearly intended that their transactions would be covered by the trust. Furthermore the letter by its terms was not an extension of credit that disregarded the 30 day limit. Indeed the letter explicitly recognized that the agreement as to payment terms could not go beyond 30 days. It appears that the parties contemplated that the invoice date was to be the date of acceptance of the produce. *The only flaw was that the mechanism for invoicing resulted in the production of an invoice one to four days after the produce arrived.* (emphasis added).

Pupillo Memorandum at 8–9.

### D. The Three PACA Trust Preservation Notices

Having determined the parties' payment terms and the sufficiency of nearly all of Pupillo's trust preservation Notices, this Court is presented with the issue of whether Pupillo's remaining five invoices, which complied with PACA's timing requirements, also fulfill the PACA notification requirements. Uni–Fin has argued that each of Pupillo's three Notices of Intent to Preserve Trust Benefits fail to set forth all information required under 7 C.F.R. § 46.46(g)(3). The regulation states:

> (3) An appropriate notice of intent to preserve trust benefits must be in writing, must include the statement that it is a notice of intent to preserve trust bene-

fits, and must include information which establishes for each shipment:

(i) The name and addresses of trust beneficiary, seller-supplier, commission merchant, or agent and the Debtor, as applicable,

(ii) The date of the transaction, commodity, contract terms, invoice, price, and the date payment was due,

(iii) The date of receipt of notice that a payment instrument has been dishonored (if appropriate),

(iv) The amount past due and unpaid.

7 C.F.R. § 46.46(g)(3).

Uni–Fin cites *In re D.K.M.B., Inc.*, 95 B.R. 774, 779 (Bankr.D.Colo.1989), for the proposition that in order to preserve its PACA trust benefits, a produce broker or seller must strictly comply with all requirements enumerated by the statute. Uni–Fin therefore contends that the omission of various terms in each of Pupillo's Notices defeats their attempted preservation of PACA trust benefits.

### 1. The First Notice

■ Pupillo's first Notice of Intent to Preserve Trust Benefits, which concerned invoice numbers 2484 ($8,825.40), 2789 ($544.00), 827CC ($603.50), and 2896 ($5,356.50), was dated February 10, 1989 and received by the United States Department of Agriculture on February 15, 1989. Uni–Fin claims that the omission of the parties' contract terms and the payment due date precludes Pupillo from properly preserving their PACA trust benefits. This Court acknowledges that Pupillo's omission of certain terms has created a deficiency in their first Notice. However, but for these omissions, Pupillo has met all other necessary requirements stated in 7 C.F.R. § 46.46(g)(3). Thus, Pupillo's near complete compliance with the regulation precludes this Court from granting Uni–Fin's Motion For Summary Judgment with regard to the invoices contained on Pupillo's first Notice.

While this portion of the decision seems to contradict the ruling in *In re D.K.M.B., Inc.*, this Court believes that the instant case is distinguishable from that decision. In *D.K.M.B.*, the produce supplier presented the court with a PACA notice which lacked the following terms: date of transactions, commodity, contract terms, invoice, price, and payment due date. In the instant case, Pupillo has omitted only the contract terms and payment due date, which are interrelated. Thus, while certainly not a flawless Notice, this Court believes that Pupillo's nearly complete compliance is sufficient to allow at least this portion of the case to move on to trial. In reaching this decision, this Court in no way seeks to draw a definitive line as to when a party's Notice to Preserve PACA Trust Benefits is sufficient. Rather, this Court believes that the most prudent course is to determine the sufficiency of each Notice on a case-by-case basis.

### 2. The Second And Third Notices

■ Pupillo's second Notice, dated February 13, 1989, was filed with the Department of Agriculture on February 21, 1989. For purposes of this case, the second Notice differs from the first in that it contains invoice number 2756 ($6,001.80), the fifth and final invoice which complied with PACA timing requirements, and begins with eight invoices not present on the first Notice. According to Ms. Pupillo's deposition testimony, Pupillo added the eight invoices upon learning that Lombardo's checks written for the respective invoices were dishonored.

Pupillo's third Notice, dated February 17, 1989, contained both the first nine entries which had appeared on the second Notice and a column entitled "Date Check Dishonored". Apparently Pupillo added the column in an effort to cure the deficiency which existed in the second Notice. Pupillo filed the third Notice timely so as to cure the deficiency in the second Notice.

While Uni–Fin raises no specific objection to the third Notice, it argues that Pupillo's second Notice is deficient in several respects. First, echoing the complaints raised regarding the first Notice, Uni–Fin contends that the second Notice fails to set forth the parties' contract terms, the payment due date, or amount past due. Sec-

ond, Uni–Fin notes that with regard to the first eight entries on the second Notice, which represent invoices paid for with dishonored checks, Pupillo has failed to set forth the date on which these checks were dishonored.

Because Pupillo filed timely its third Notice, thereby curing the lack of a "date of check dishonorment" term on its second Notice, this Court chooses to treat Notices two and three effectively as one Notice. Thus, with the "check dishonorment" deficiency cured by combining the two Notices, Notices two and three contain only the same minor deficiencies to which Uni–Fin objected in Pupillo's first Notice. Given that the first Notice was deemed sufficient to satisfy PACA's notice requirements, this Court is logically compelled to rule that Pupillo's second and third Notices, when combined, satisfy those same notice requirements.

## CONCLUSION

Pupillo has argued that because the parties disagree on whether their payment terms were twenty-one days or thirty days from date of invoice, this Court is precluded from deciding Uni–Fin's Motion for Summary Judgment. The testimony of Mrs. Pupillo, however, indicates that the terms were thirty days from invoice. In addition, it is clear that these terms exceed the time period permitted by the PACA statute. Finally, this Court concludes that Pupillo has adequately preserved its PACA benefits in the five remaining invoices which complied with the PACA time period. Accordingly, it is

ORDERED that Pupillo Brokerage Company is not entitled to preservation of its trust benefits under the Perishable Agricultural Commodities Act and Uni–Fin's Motion for Summary Judgment is GRANTED with respect to all invoices except numbers 2484, 2756, 2789, 827CC, and 2896.

IT IS FURTHER ORDERED that trial on the remaining relief sought by Pupillo (based upon the five (5) invoices set forth above) shall be held November 20, 1989, at 9:30 a.m.