**In re RICHMOND PRODUCE CO., INC., a California corporation,**

**DEBRUYN PRODUCE COMPANY, a Michigan corporation and Colvin Distributing Co., a California corporation, Plaintiff,**

**v.**

**RICHMOND PRODUCE CO., INC., and the Mechanics Bank, Defendants.**

Bankruptcy Nos. 4–89–00513 N3, 4–89–0078 and 4–89–0079 AJ.

United States Bankruptcy Court, N.D. California.

March 16, 1990.

---

**4.** The Appellant does not allege that the sale of the subject property lacked a good business pur-

pose.

David J. Arata, San Jose, Cal.

Frederick W. Daily, San Francisco, Cal.

Robert T. Dollinger, Ogden, Murphy & Wallace, Wenatchee, Wash.

David M. Dooley, Dooley, Anderson, Johnson & Pardini, San Francisco, Cal., for Colvin Distributing.

Mark Gorton, McDonough, Holland & Allen, Sacramento, Cal.

Kevin E. Irwin, Keating, Muething & Klekamp, Cincinnati, Ohio.

Lynn A. Koller, Koller & MacConaghy, Emeryville, Cal., for debtors.

Anne M. Frasetto, Abramson, Church & Stave, Salinas, Cal.

Janet LaBonte, Rose Valley Group Inc., Woodland, Cal.

Ralph W. Pederson, Manager, Credit & Collections, Sunkist Growers, Inc., Sherman, Cal.

Michael St. Peter, Kaplan, Russin, Vecchi & Eytan, San Francisco, Cal.

Marion I. Quesenbery, Dressler & Quesenbery, Newport Beach, Cal.

Sandra Quigley, Bronson, Bronson & McKinnon, San Francisco, Cal.

Bruce A. Richardson, Wykoff, Richardson, Sanson, Allen & Locks–Paddon, Watsonville, Cal.

Carol C. Shandler, Encino, Cal.

Darya S. Druch, Stokes, Welch, Stromscheim & Olrich, San Francisco, Cal.

John T. Hansen, Richard A. Lapping, Thelen, Marrin, Johnson & Bridges, San Francisco, Cal., for the Mechanics Bank.

Daniel A. McDaniel, David L. Grilli, Nomellini & Grilli, Stockton, Cal.

Peter S. Munoz, Lynn M. McLean, Jackson, Tufts, Cole & Black, San Francisco, Cal.

Jeffrey M. Chebot, Owens, Whiteman and Bankes, Philadelphia, Pa.

Duane M. Geck, Severson & Werson, San Francisco, Cal., Stephen P. McCarron, Steven H. Kerbel, Sures, Dondero and McCarron, Silver Spring, Md., for Debruyn Produce and Colvin Distributing Co.

## DECISION

EDWARD D. JELLEN, Bankruptcy Judge.

### I. INTRODUCTION

Numerous motions and cross-motions for summary judgment pursuant to Bankruptcy Rule 7056 have been filed in these consolidated adversary proceedings, by which many unpaid sellers and suppliers of perishable agricultural commodities ("claimants") to Richmond Produce Company, Inc., the above-debtor ("debtor"), seek to establish that accounts receivable proceeds of the debtor in the approximate sum of $700,000 (which are impounded pursuant to order of this court) are trust funds under the trust provisions of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. Section 499e(c). Claimants' trust fund claims are disputed by The Mechanics' Bank of Richmond ("Bank"), which has a perfected security interest in all the debtor's accounts receivable and the proceeds thereof to secure an obligation in the sum of $1,460,681.

The debtor takes no position concerning the present motions. Consequently, the court is faced with a series of related disputes between the Bank, on the one hand, and a PACA claimant, on the other, as to whether the claimant's trust fund claim has been preserved in accordance with the requirements of PACA and regulations thereunder, 7 CFR Section 46.1 et. seq. The parties are in agreement that any monies found to be trust funds pursuant to PACA are not property of the estate under Bankruptcy Code Section 541(a). See, e.g. *In re Milton Poulos, Inc.*, 107 B.R. 715, 718 (9th Cir. BAP 1989); *In re Fresh Approach, Inc.*, 51 B.R. 412, 419 (Bky. N.D.Tex. 1985).

As a related matter, several PACA claimants contend that the Bank received trust funds from the debtor which it must disgorge, and have moved for summary judgment against the Bank. The Bank, in turn, contends that it may retain these funds and that it is entitled to summary judgment on this issue.

Twenty-six PACA claimants are before the court. Four claimants, Arata Ranches, New West, Rose Valley and Salinas Lettuce Farmers Coop concede that they do not have a valid PACA claim. A fifth claimant, Sierra Packing, admits that its PACA claim has been paid, but answered the complaint to preserve its rights in the event that the payment it received is avoided. The Bank concedes the validity of the PACA claim in the sum of $44,863.60 asserted by a sixth claimant, Chiquita Brands, and three claimants, Country Produce, Inc., Greenleaf Produce Co. and Watsonville Exchange, failed to respond to the Bank's motion. The following is a list of the seventeen remaining claimants and the amount of each claimant's disputed PACA claim:

1. Bud of California, Inc. ("Bud") $ 67,518.85
2. Buak Fruit Co. ("Buak") 1,200.00*
3. Colvin Distributing Co. ("Colvin") 85,874.10
4. Custom Fruit Sales, Inc. ("Custom") 148,797.20
5. Blue Goose Growers ("Dole Citrus") dba Dole Citrus 3,258.00
6. Dole Fresh Fruit Co. ("Dole Fresh") 69,232.18
7. Debruyn Produce Co. ("Debruyn") 27,097.75
8. Elwin R. Mann, Inc. ("Elwin Mann") 3,024.00
9. Freshco, Inc. ("Freshco") 3,249.40*
10. Mann Packing Co., Inc. ("Mann Packing") 59,015.10
11. Merrill Farms ("Merrill") 2,923.20*
12. Monterey Mushrooms, Inc. ("Monterey") 27,702.75
13. Oshita Marketing, Inc. ("Oshita") 18,749.95
14. Produce Exchange, Inc. ("TPE") 423,569.47
15. Sam Wong & Son, Inc. ("Sam Wong") 146,312.48*
16. Sunkist Growers, Inc. ("Sunkist") 24,227.00*
17. Tavilla Sales Co. ("Tavilla") 25,071.67

* Claim as reduced by the claimant following the filing of the Bank's motion, to reflect allegations therein which the claimant concedes to be well grounded.

## II. OVERVIEW OF PACA

■ PACA was enacted by Congress in 1930 to regulate the interstate and foreign shipment and handling of perishable agricultural commodities. In 1984, Congress amended PACA by adding 7 U.S.C. Section 499e(c), under which a buyer of perishable agricultural commodities holds the produce and any related inventory and accounts receivable in trust for the benefit of all of the buyer's unpaid sellers. The unpaid sellers are not required to trace, and the trust arises immediately upon delivery. *In re W.L. Bradley Co., Inc.*, 75 B.R. 505, 509 (Bky. E.D.Pa. 1987); *In re Fresh Approach, Inc.*, 51 B.R. 412, 422–423 (Bky. N.D.Tex. 1985).

The purpose of this legislation is set forth in 7 U.S.C. Section 499e(c)(1), which provides as follows:

"(1) It is hereby found that a burden on commerce in perishable agricultural commodities is caused by financing arrangements under which commission merchants, dealers, or brokers, who have not made payment for perishable agri-cultural commodities purchased, contracted to be purchased, or otherwise handled by them on behalf of another person, encumber or give lenders a security interest in, such commodities, or on inventories of food or other products derived from such commodities, and any receivables or proceeds from the sale of such commodities or products, and that such arrangements are contrary to the public interest. This subsection is intended to remedy such burden on commerce in perishable agricultural commodities and to protect the public interest."

PACA and the regulations thereunder, 7 CFR Section 46.1 et. seq., set forth the procedural steps with which a PACA claimant must comply in order to preserve the claimant's trust benefits. Essentially, the claimant must give the buyer written notice of the claimant's intent to preserve the benefits of the trust, and file a copy of that notice with the United States Department of Agriculture ("USDA").

The statute sets forth three alternatives as to the timing of the notice. 7 U.S.C. Section 499e(c)(3). The first alternative permits the filing of the notice within thirty days after expiration of the time by which payment must be made as set forth in the regulations issued by the Secretary of Agriculture. 7 U.S.C. Section 499e(c)(3)(i). The regulations, in turn, set forth, detailed provisions as to when a buyer must make payment. 7 CFR Section 46.2(aa). For present purposes, the provision of primary relevance is that which requires the buyer to make payment within ten days following the buyer's acceptance of delivered produce. 7 CFR Section 46.2(aa)(5).

The second alternative permits the filing of a notice within thirty days after passage of the time period agreed upon between the seller and buyer in a written contract entered into prior to the transaction, 7 U.S.C. Section 499e(c)(3)(ii), so long as such payment period is not in excess of thirty days after the buyer's acceptance of the produce. 7 CFR Section 46.46(f)(2). Under the third alternative, if a payment by check is tendered and the check fails to clear, the notice may be filed within thirty days fol-

lowing the seller's receipt of notice that the check failed to clear. 7 U.S.C. Section 499e(c)(3)(iii).

### III. FILINGS ALLEGED TO BE PREMATURE

It is not disputed that four claimants filed notices with the USDA before the due date of some of the invoices covered by the notices. Specifically, Sam Wong's filing of February 3, 1989 included six invoices for which payment was due on various dates from February 5 to February 11, 1989. Dole Fresh's filing of February 6, 1989 included an invoice payable on February 8, 1989. Colvin's filing of February 7, 1989 included eight invoices for which payment was due on various dates from February 8 to February 12, 1989. Bud's filing of February 16, 1989 included invoices for which payment was due on various dates from February 17 to February 24, 1989.

7 U.S.C. Section 499e(c)(3) provides in relevant part, as follows:

"(3) The unpaid supplier, seller, or agent shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker and has filed such notice with the Secretary within thirty calendar days (i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary, (ii) after expiration of such other time by which payment must be made as the parties have expressly agreed to in writing before entering into the transaction, or (iii) after the time the supplier, seller, or agent has received notice that the payment instrument promptly presented for payment has been dishonored. . . ."

The Bank argues that this statutory language creates a thirty day "window of time" in which the claimant's USDA filing must take place, and that any filing which takes place sooner than the triggering event, i.e., a default, is ineffective to preserve the trust rights of the claimant.

The foregoing claimants admit that the notices in question were filed prior to the occurrence of a default, but contend that such a filing does not automatically invalidate their trust claims, and in addition, that they were entitled to file before the date the debtor was technically in default because the debtor's Chapter 11 bankruptcy petition filed February 7, 1989 intervened between the date of invoice or delivery and the date on which payment was due, or was anticipated at the time the claimant filed its notice.

██ As to each of the foregoing claimants, the court holds that the claimant's trust claim was validly preserved notwithstanding the fact that the notice was given prior to the date on which the default arose.

The court has been directed to only one case which deals with the issue raised. In *In re W.L. Bradley Co., Inc.*, 75 B.R. 505 (Bky. E.D.Pa. 1987), the claimant had mailed its PACA notice to the USDA some eleven days before payment from the debtor was due, and the USDA received the notice three days later. The court held that the claimant had validly preserved its trust claim. In its opinion, the court first noted that no policy goal appeared to be served by invalidating a trust notice filed before the date of the default, especially when PACA provides that the trust arises upon delivery of the produce and not upon occurrence of the default. Thus, although the notice serves to preserve rights which previously accrued, no substantive rights or priorities are created by the filing of the notice or measured from the filing date. The court also noted that its construction of the statute was consistent with the PACA's purpose of establishing increased protection and an effective remedy for unpaid sellers and suppliers of perishable agricultural commodities. 7 U.S.C. Section 499e(c)(1).

The Bank argues in response that the filing of a PACA notice triggers regulatory activity on the part of the USDA, and that sound policy dictates that notices not be filed until a default has actually occurred or the USDA will be "inundated with notices" which sellers will automatically file and serve at the time the buyer is invoiced.

Here, however, it would have been an idle act for the claimants to await the contractual default date before filing their PACA notices; because of the Chapter 11 filing, it was a virtual certainty that a default would occur.

Moreover, there is no indication from the papers filed that the USDA rejected the allegedly premature notices at issue, or that the filing of these notices created a regulatory problem of any type. In addition, the policy consideration suggested by the Bank is outweighed by the policy consideration which supports a more liberal construction of the statute to give effect to its remedial purpose, a goal which would not be advanced under the Bank's construction.

The Bank also argues that *In re Marvin Properties, Inc.*, 76 B.R. 150 (9th Cir. BAP 1987), aff'd, 854 F.2d 1183 (9th Cir.1988) requires that PACA be strictly construed and that under such a construction, the notices at issue must be found to be ineffective. In *Marvin Properties*, the seller had failed to give written notice to the debtor of its intent to preserve the benefits of the trust. The seller did file a notice with the USDA, which sent the debtor a copy of its acknowledgment of receipt of the notice. The Bankruptcy Appellate Panel held that the seller's trust claim failed because of the seller's failure to comply with the clear language of the statute, stating that "[w]here the statutory language is plain, there can be no liberal construction in the seller's favor." *Id.* at 153.

In its affirming opinion, the Ninth Circuit Court of Appeals did not comment as to whether PACA should be given a liberal or strict construction, but did hold that PACA was clear and unambiguous in requiring the seller to give written notice directly to the buyer, and consequently, that the decision of the court below must be affirmed. Thus, *Marvin Properties* does not stand for the general proposition that PACA must be strictly construed. Rather, it stands for the proposition that the plain unambiguous requirements of the statute may not be disregarded.

Here, the statute does not contain any plain and unambiguous language prohibiting the filing of a PACA notice after delivery and before a default. Moreover, the language at issue, "within thirty calendar days ... after" can be viewed as having been included solely to establish the last day on which a notice can be filed, rather than the first and last day. It follows that a liberal construction of the timing requirements for filing is not in conflict with the language of the statute or the holding of *Marvin Properties.*

## IV. ALLEGED NOTICE DEFICIENCIES

Subsection (3) of 7 U.S.C. 499e(c) provides that the unpaid claimant shall lose the benefit of the trust unless the claimant "has given written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker and has filed such notice with the Secretary ...". The USDA's regulations, 7 CFR 46.-46(g)(3), provide that the notice must not only state that it is a notice of the claimant's intent to preserve trust benefits, but that it also:

"... include information which establishes for each shipment:

(i) The name and addresses of the trust beneficiary, seller-supplier, commission merchant, or agent and the debtor, as applicable,

(ii) The date of the transaction, commodity, contract terms, invoice, price, and the date payment was due.

(iii) The date of receipt of notice that a payment instrument has been dishonored (if appropriate),

(iv) The amount past due and unpaid."

The Bank contends that TPE's notices dated January 13, January 26, January 31, February 2 and February 10, 1989, are invalid because they do not include the date of the transaction, contract terms and price of the commodities sold. The form of notice used by TPE contains five columns, setting forth, respectively, TPE's invoice number, invoice date, the commodities sold, the payment due date and the amount due. It is true that the contract terms are not

specified; the contract of November 22, 1988 provides for a twenty-one day payment period from the date of shipment if the purchase was F.O.B. or from the date of delivery, if otherwise, and this information is not set forth in the PACA notice. Some of the payment due dates appear to be incorrect. Moreover, the indicated amounts due are a lump sum for the entire invoice without designation of the price for each commodity included in that invoice.

The Bank contends that Monterey's notice dated January 10, 1989 is invalid because it omits the name and address of the seller, the type of commodity covered and the price thereof, the contract terms and the due date of payment. The Bank further alleges that Custom's notice filed February 8, 1989 does not contain the name and address of the debtor and that its notice filed February 23, 1989 does not identify the commodities sold. The Bank also contends that Mann Packing's notice filed December 5, 1988 does not contain an invoice number.

The uncontroverted declarations filed by Monterey, Custom and Mann Packing state, however, that copies of the applicable invoices were attached to the notices, and it appears that substantially all of the information alleged to be excluded is set forth in, or can be ascertained from, these invoices.

Colvin is alleged to have misnamed the buyer in several notices (which name an officer of the debtor rather than the debtor as the buyer), although the notices in question duplicate the information in Colvin's notice filed February 7, 1989, and the mistake is thus irrelevant.

Debruyn is alleged to have stated an incorrect transaction date in its notice filed February 3, 1989. The notice does correctly set forth the shipping date, however, which is the date from which the due date of debtor's payment is to be determined pursuant to the parties' contract of January 7, 1987.

The court has been directed to three cases dealing with the issue of a notice which was alleged to be insufficient under 7 CFR Section 46.46(g)(3). In *In re Carl-*ton Fruit Co., Inc., 84 B.R. 810, 812 (Bky. M.D.Fla. 1988), the court opined that "the purpose of the notice is merely to notify the Secretary of Agriculture of the trust and also, of course, to notify the Debtor", and that the defects at issue asserted by the debtor were not fatal. This case, however, is easily distinguished because the court also found that the debtor had failed to provide the seller with the information which the seller omitted from the notice.

In *In re Lombardo Fruit and Produce Co.*, 107 B.R. 654 (Bky. E.D.Mo. 1989), the court held that the seller's omission from the notice of the contract terms and payment due date did not invalidate the notice and that "near complete compliance" by the claimant with 7 CFR Section 46.46(g)(3) precluded summary judgment in favor of the debtor's secured lender. *Id.* at 661.

A different approach was taken by the court in *In re D.K.M.B., Inc.*, 95 B.R. 774 (Bky. D.Colo. 1989) wherein the court stated that because of the "Draconian impact" of the PACA statute on the bankruptcy estate, strict compliance is required with PACA and the regulations thereunder. *Id.* at 779. The court therefore disallowed the trust claim of a claimant which had timely filed a PACA notice which set forth the claimant's intent to preserve its trust rights and the names and addresses of the claimant and buyer, which notice was apparently supplemented with some delivery receipts containing the date of the transaction and gross price of all the items delivered, but "only gross amounts and little or no detail as to what commodities were ordered or delivered". *Id.* at 779.

The court in *D.K.M.B.* reasoned that a strict construction of PACA and its regulations was mandated, not by PACA, but rather, by the Bankruptcy Code. This court, however, is not prepared to follow this approach under circumstances where, as here, no contention is made that any provision of PACA is inconsistent with any provision of the Bankruptcy Code. Indeed, the legislative history of Bankruptcy Code Section 541(a), which defines the property of the bankruptcy estate, provides that "[n]either this section nor section 545 will

affect various statutory provisions that ... create[ ] a trust fund for the benefit of a creditor of the debtor. See Packers and Stockyards Act section 206, 7 U.S.C. Section 196." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 367–8 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 82–3 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5868, 6324. The court believes that the relevant focus of its inquiry should not be an assessment of the extent to which the allowance of a disputed PACA claim would adversely effect the bankruptcy estate, but rather, a determination of whether the allowance would be consistent with PACA.

In this respect, it is apparent that nothing in PACA requires that the notice contain all of the information set forth in the USDA's regulations; the only express requirement of the statute concerning the contents of the notice is that the notice state the claimant's intent to preserve the benefits of the trust. Moreover, the statute does not even direct the USDA to enact regulations as to the contents of the notice. Consequently, although the regulations must be considered, the court is not required to give this portion of the regulations the deference to which they would be entitled if they had been enacted pursuant to a statutory mandate. See, e.g., *Onslow County, N.C. v. U.S. Dept. of Labor*, 774 F.2d 607, 611 (1985); *United States v. Caceres*, 440 U.S. 741, 749, 99 S.Ct. 1465, 1470, 59 L.Ed.2d 733 (1978).

In addition, as was the case with the allegedly premature notices, there is no indication from the declarations that the USDA rejected the notices at issue, that the notices created a regulatory problem of any kind or that anyone was harmed or mislead by the omissions. In each case, the transactions in question were ascertainable from the notice.

■ For the foregoing reasons, the court holds that substantial and not strict compliance with 7 CFR Section 46.46(g)(3) is sufficient to preserve a claimant's trust rights, and that each of the above allegedly defective notices complies or substantially complies with PACA and the regulations thereunder.

## V. CONTRACTS TO EXTEND PAYMENT

■ The Bank contends that eight PACA claimants filed notices which were not timely because extended payment terms, if any, were not supported by a written contract. As mentioned above, pursuant to 7 U.S.C. Section 499e(c)(3), the claimant must file notice of the claimant's intent to preserve the benefits of the trust within thirty days following a payment default by the buyer. A default occurs ten days following the buyer's acceptance of the produce (7 CFR Section 46.2(aa)) unless the parties had agreed in writing to a different payment period before entering into the transaction. 7 U.S.C. Section 499e(c)(3)(ii).

In a number of cases now before the court, the claimant filed a PACA notice more than forty days after debtor's acceptance of the produce but within thirty days following passage of a twenty-one day period from shipment or invoice. Thus, these notices would be timely if the payment period was extended to twenty-one days pursuant to a written contract of the type contemplated by 7 U.S.C. Section 499e(c)(3)(ii) and would be late if such a written contract did not exist.

Three claimants, Tavilla, Bud and Custom have filed a declaration which included a copy of a contract signed by the debtor by which the payment terms were extended from ten to twenty-one days in respect of *future shipments.* Specifically, Tavilla has furnished a letter dated October 10, 1988 executed by debtor's representative, John Clow, which provides for the debtor to make payment within twenty-one days following the date of invoice. The letter furnished by Bud is dated August 5, 1988 and was executed by Mr. Clow on August 12, 1988, and provides for payment to be made within twenty-one days following shipment. The letter furnished by Custom is dated December 5, 1988, was signed by Mr. Clow on December 16, 1988 and provides that "our credit terms are net twenty-one days from shipment." The Bank makes no

claim that these letters were not sufficient to extend the payment period[1] and the court holds that they meet the requirements of 7 U.S.C. Section 499e(c)(3)(ii).

Two claimants, Sam Wong and Buak, furnished the debtor with invoices stating that payment was due after periods of thirty and fifteen days, respectively, but concede that they did not obtain written contracts to extend the ten-day payment period provided by 7 CFR Section 46.2(aa)(5). However, it appears from the declarations that all of the notices filed by these claimants were timely with reference to a ten-day payment period, with the exception of the notice filed by Buak in respect of a $440 invoice. Buak concedes that his amount may be deducted from its PACA claim.

■ The remaining three claimants are Debruyn, Mann Packing and TPE, each of which relies on a letter the claimant sent to the debtor, which the debtor never signed, to establish an extension of the payment period pursuant to a written agreement. Debruyn sent the debtor a letter dated January 7, 1987 which set out a payment term of twenty-one days from shipping date. The letter stated that it was being furnished to satisfy PACA's requirement that there be a "written agreement" to extend the otherwise applicable payment terms, and that unless the debtor objected promptly in writing before placing any new orders, the letter would serve as the parties' agreement as to the payment terms. The letter added that the law required the debtor to keep a copy for its files.

By letter dated February 1, 1985, Mann Packing established a payment term of twenty-one days from shipment. By letter dated June 1, 1988, the twenty-one day payment term was reiterated. Both of these letters state that the letter is furnished in compliance with PACA. By letter dated November 22, 1988, TPE stated that its "payment terms are net, twenty-one days from the date shipped if it was purchased FOB, or the date delivered if it was purchased on that basis."

Neither PACA nor the USDA's regulations expressly requires that the writing which embodies the agreement be signed by the buyer or that any particular form of agreement be used. The Bank cites *In re Prange Foods, Corp.*, 63 B.R. 211 (Bky. W.D.Mich. 1986) as authority for the proposition that an agreement to extend the payment term beyond that provided by the USDA's regulations must be signed by the buyer for the agreement to be valid under 7 U.S.C. Section 499e(c)(3)(ii). In *Prange*, the debtor had posted a notice setting forth its quotas, rates and payment terms for the purchase of peppers, and sent copies to all growers from whom the debtor had previously purchased peppers. The court held that the letter was a unilateral offer seeking acceptance by performance rather than by a writing, and consequently, that the payment term was not "expressly agreed to in writing".

Interestingly, the court reached this conclusion after acknowledging that the "terms are certainly written down, the parties did have a contract, and it was a written contract of sorts." *Id.* at 220. Apparently, however, the parties before the court in *Prange* did not argue that a contrary result was dictated by the Uniform Commercial Code. California Uniform Commercial Code Section 2201(2) provides:

"(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subdivision (1) [requirements of a writing] against such party unless written notice of objection to its contents is given within 10 days after it is received."

In *Procyon Corp. v. Components Direct, Inc.*, 203 Cal.App.3d 409, 413, 249 Cal.Rptr. 813 (1988) the court held that the words

---

1. The Bank has moved to strike the declarations filed by Bud and Tavilla on the ground that these claimants did not furnish copies of the documents referenced therein in response to a prior discovery request. This motion will be denied. If any of these claimants have committed discovery violations or other wrongful acts in the defense of the Bank's motion, the Bank can request a less harsh sanction.

"sufficient against the sender" should not be construed to require a signature to the letter as a condition to its enforceability as a contract.

Here, the uncontradicted declarations submitted by Debruyn, Mann Packing and TPE establish that the parties were "merchants" (California Uniform Commercial Code Sections 2104(1) and (3)), that the above-referenced letters were sent to the debtor, that the claimant intended to establish the debtor's payment terms pursuant to the letter and that the debtor did not protest. The letters sent by Debruyn and Mann Packing specifically mention that they are being furnished for purposes of compliance with PACA. The declarations also show that the payment terms set forth in the letters were also set forth in the claimants' invoices to the debtor. The court therefore concludes that binding contracts existed pursuant to California Uniform Commercial Code Section 2201(2).

The Bank argues that application of California Uniform Commercial Code Section 2201(2) may result in a binding contract under state law, but that more is required for a claimant to satisfy PACA's requirement that the payment arrangement be "agreed to in writing". Although it is true that the question is one of federal, not state law, a careful review of the statute and relevant regulations, 7 CFR Sections 46.2(aa)(11) and 46.46(f)(1), leads the court to conclude that the purpose of the writing requirement is to preclude uncertainties as to the applicable payment terms and the resulting deadline for filing a PACA notice. Thus, the provision at issue is in the nature of a statute of frauds and serves the same purpose. This conclusion is supported by the statutory requirement that both parties maintain a copy of the agreement in their records and that the terms of payment be disclosed on "invoices, accountings and other documents relating to the transaction". 7 U.S.C. Section 499e(c)(3).

In the present case, contracts existed which were in writing and legally binding in the absence of the debtor's signature. These contracts fulfilled the policy objective of 7 U.S.C. Section 499e(c)(3)(ii). The court therefore concludes that the letters sent by Debruyn, Mann Packing and TPE were sufficient under PACA to extend the debtor's time for payment to twenty-one days. It follows that the notices filed by these claimants were timely.

*C.H. Robinson Co. v. B.H. Produce Co., Inc.*, 723 F.Supp. 785 (N.D.Ga.1989), cited by the Bank, is not to the contrary. There, the claimant had relied on a provision in its invoice to serve as a written agreement under the statute, and the court held that the invoice did not qualify because the invoice was not given before the transaction occurred, as required by the statute. (Moreover, the last sentence of 7 U.S.C. Section 499e(c)(3) distinguishes between the agreement which establishes the applicable payment terms and the invoices which disclose those terms.) Here, the letters at issue were furnished well prior to delivery of the produce, and thus preceded the sale transaction as required by 7 U.S.C. Section 499e(c)(3)(ii).

## VI. DISHONORED CHECKS

Three claimants, TPE, Custom and Tavilla, rely upon 7 U.S.C. Section 499e(c)(3)(iii) to render timely notices which were given at a time which would otherwise be late under the statute. Subsection (iii) of 7 U.S.C. Section 499e(c)(3) provides that a notice is timely if given within thirty days "after the time the supplier, seller or agent has received notice that the payment instrument promptly presented for payment has been dishonored."

The Bank contends that certain of the debtor's checks to TPE, which the Bank identifies by date only, were not "promptly presented for payment" based upon the fact that 7 CFR Section 46.2(aa)(5) requires payment to be made within ten days following acceptance of the produce and that the debtor's check was not presented within this ten day period. The Bank also contends that these checks were not presented within the twenty-one day period mentioned in TPE's letter to the debtor of November 22, 1988.

These arguments misconstrue the statute. The term "presentment" generally

means "a demand for acceptance or payment made upon the maker, acceptor, drawee or other payor by or on behalf of the holder." See, e.g. California Uniform Commercial Code Section 3504. Under the Bank's construction of the statute, a payment check must not only be promptly tendered to the seller within the time required for payment, but must also, within this period, be presented by the seller to the drawee bank for payment. (This would be an impossibility in the case of a timely payment by check at the close of business on the last day.)

The court believes that PACA's reference to "prompt presentment" was not intended to require presentment by the same deadline as exists for payment, but rather, to deny trust protection in the case of checks which, although timely tendered as payment, are thereafter held by the seller for an unreasonable period of time.

The Bank also argues that subsection (iii) of 7 U.S.C. Section 499e(c)(3) is not available to allow lapsed trust rights to be revived, lest an insolvent debtor be induced to tender the seller a worthless check to enable that seller to regain a lost priority.

The court agrees with the Bank's statement as a general proposition, but disagrees that it is applicable in a case where a check is tendered to the seller within the applicable time period provided by subsection (i) or (ii) of 7 U.S.C. Section 499e(c)(3) and subsequently dishonored. In such a situation, the claimant, having received the check on a timely basis, would not know at the time of tender that the check will not clear, and thus, has no reason to serve and file a PACA notice; indeed, the claimant, presumably, would believe that payment had been made.[2] Under such circumstances, the statute enables the claimant to file a PACA notice thirty days after the claimant learns that the check has been dishonored.

On the other hand, the Bank's construction makes complete sense in a situation where a check is tendered as payment after passage of the periods provided by subsec-

tions (i) and (ii) of 7 U.S.C. Section 499e(c)(3), and in such instances, subsection (iii) should not be construed to extend the notice period (which would have started running, or even could have lapsed, prior to the seller's receipt of the check). Accord: *In re Lombardo Fruit and Produce*, 106 B.R. 593, 600–601 (Bky. E.D.Mo. 1989).

Here, it appears from the declarations filed by TPE that it submitted debtor's checks for collection within three days after they were tendered by the debtor. Nevertheless, the court cannot ascertain whether the checks were tendered by the debtor to TPE within the time required for payment, and therefore concludes that a genuine issue of material fact exists in respect thereof.

With respect to Custom, the declarations show that the debtor received the produce covered by Custom's invoices nos. 3110 and 3113 on December 16 and December 17, 1988. The debtor's payment check for these invoices is dated January 5, 1989, and the stamp on the reverse shows that it was submitted for collection on January 6, 1989. Thus, the check was tendered by the debtor as payment on a timely basis within the twenty-one day period agreed upon by the parties. The declaration also shows that Custom was notified on January 16, 1989 that the check failed to clear and that Custom's PACA notice was filed within thirty days thereafter. It follows that the notice filed by Custom was timely.

The third claimant which received checks which failed to clear is Tavilla, which shipped goods to the debtor covered by its invoice nos. 60005, 60235, 59738 and 59992 in the total sum of $3,820.92 during the period from November 14 through November 22, 1988. Tavilla filed its notice on January 13, 1989, outside of the statutory filing period. Debtor then delivered to Tavilla its check for the produce covered by these invoices. Tavilla received the check on January 24, 1989, after passage of the twenty-one day period which the parties

---

**2.** Under California Uniform Commercial Code Sections 2511(2) and 3802(1)(b), a payment by check is generally a tender sufficient to suspend the buyer's payment obligation pending presentment.

had agreed upon for payment. Tavilla promptly presented this check for payment, received a notice of dishonor on January 30, 1989 and filed another notice on February 8, 1989, less than thirty days later.

■ Tavilla does not claim that its original filing was timely, but contends that its second filing was timely with reference to the notice of dishonor. It is not disputed, however, that debtor's check was not tendered within the twenty-one day period for payment provided by 7 U.S.C. Section 499e(c)(3)(ii), or that Tavilla's second notice was filed more than thirty days after the date on which the debtor's payment was due. It follows that the second notice was not timely, and that Tavilla's PACA claim must be reduced by $3,820.92.

### VII.  PACA CLAIMS FOR COSTS, INTEREST AND ATTORNEY'S FEES

■ Some of claimants contend that they are entitled to trust protection for their costs, interest and attorney's fees under PACA or their respective agreements with the debtor.

In *In re Milton Poulos, Inc.*, 107 B.R. 715 (9th Cir. BAP 1989), the court had occasion to discuss the propriety of allowing such claims, and held that under PACA, there is no express statutory right to an award of interest, attorney's fees and costs, and that the court's denial thereof was not abuse of discretion. Accord, *In re W.L. Bradley Co., Inc.*, 75 B.R. 505 (Bky. E.D.Pa. 1987); contra, *In re Monterey House, Inc.*, 71 B.R. 244 (Bky. S.D.Tex. 1986). Here, the allowance of such claims would only serve to modify the apportionment of the impounded funds in favor of some claimants as against others, when all of the claimants are similarly situated. Under these circumstances, denial of such claims is appropriate.

### VIII.  CLAIMS AGAINST THE BANK FOR REFUND OF TRUST FUNDS IT RECEIVED

■ The next issue is whether the Bank must refund certain monies it received and applied to reduce the debtor's indebtedness, on the ground that such monies are trust funds which the debtor transferred to the Bank in violation of the claimants' rights as PACA trust beneficiaries. The Bank admits that on February 3, 1989, its representative hand delivered a letter to Fry's Supermarkets demanding that all accounts it owed debtor be paid to the Bank pursuant to the default provisions of the Bank's security agreement. On February 6, 1989, the Bank received three checks from Fry's totaling $120,397.54, and deposited the funds in the debtor's checking account (which, at the time, had a credit balance of $31,555.51).

On February 6, 1989, after making adjustments for returned checks and releasing $44,570.52 to the debtor to fund the debtor's payroll, the Bank applied $105,000 from the checking account to debtor's outstanding indebtedness. TPE, one of the claimants which contends that the Bank must refund these monies, has filed the declaration of its collection agent, Donald Held, stating that the Bank may have received an additional $200,000, based upon a ledger card maintained by the debtor (a copy of which is attached to the declaration) which shows a $200,000 credit to Fry's account on or about February 3, 1989.

The Bank does not dispute that the monies it received from Fry's were trust funds under PACA. 7 U.S.C. Section 499e(c)(2). The Bank contends, however, that under common law trust principles, a transferee of trust funds may not be required to return the funds if the transferee is a bona fide purchaser who received the funds, for value, without actual or constructive knowledge that the transfer constituted a breach of trust, citing Restatement (Second) of Trusts, Section 284 and 4 Scott & Fratcher, *Scott on Trusts* Section 296 (4th ed. 1989).

As factual support for its defense, the Bank has submitted the declaration of William J. Schwerin, a Vice-President of the Bank, who states that until February 16, 1989, the date of a hearing in the bankruptcy court, he had no knowledge of the existence of PACA, and thus, that the debtor's receivables might be subject to a trust, and had no knowledge that certain of the debt-

or's suppliers claimed an interest in the debtor's receivables superior to the Bank's security interest. Mr. Schwerin further states that pursuant to the terms of the Bank's security agreement with the debtor, the Bank received weekly reports concerning the debtor's accounts receivable, and that these reports showed that the debtor made beverage sales representing approximately three percent of the debtor's average monthly sales. The parties agree that beverages are not a perishable agricultural commodity. Significant for present purposes, however, is the fact that these reports put the Bank on notice that approximately 97% of the debtor's sales were of perishable agriculture commodities.

A number of courts have had occasion to discuss the circumstances under which a recipient of monies which are trust funds by federal statute must refund same for the benefit of the trust beneficiaries. The case most often cited is *In re Gotham Provision Co., Inc.*, 669 F.2d 1000 (5th Cir.1982), a case governed by the Packers and Stockyards Act, 7 U.S.C. Section 181 et seq.[3] In *Gotham*, a bank lender had received accounts receivable proceeds from the debtor which reduced the debtor's loan balance from $450,000 to $112,324 during a five week period commencing one month prior to the debtor's bankruptcy. The bankruptcy court held that the subject monies were trust funds that the bank was required to refund. The district court affirmed.

On appeal, the Fifth Circuit Court of Appeals analyzed the legislative history of the Packers and Stockyards Act and concluded that its trust provisions were intended to protect unpaid cash sellers against the competing claims of lenders with security interests in inventory and accounts receivable. In arriving at its opinion sustaining the district court, the court stated that "those who receive a transfer of assets from the commingled fund with actual or constructive notice of the trust" are subject to the claims of the trust beneficiaries, and that "the Bank had constructive notice of

the trust because a federal statute created the trust". *Id.* at 1011. See also *In re G & L Packing Co., Inc.*, 41 B.R. 903 (N.D.N.Y.1984); *Matter of Harmon*, 11 B.R. 162 (Bky. N.D.Tex. 1980).

The Bank argues that application of this rule would produce a "chaotic effect" because payments made by a debtor to innocent persons such as employees and unsuspecting creditors could be recovered as trust funds. These concerns, however, were addressed by the recent opinion of the court in *C.H. Robinson Co. v. B.H. Produce Company, Inc.*, 723 F.Supp. 785 (N.D.Ga.1989). In *C.H. Robinson Co.* the court concluded, following *Gotham*, that lenders with actual or constructive knowledge of a PACA trust must refund any monies they received in violation of that trust. The court disagreed with the conclusion of the court in *Gotham* only on the question of when constructive knowledge is to be imputed to a lender. As mentioned above, the court in *Gotham* stated that constructive knowledge must be imputed because of the existence of the statute. The court in *C.H. Robinson Co.* held, instead, that knowledge is to be imputed either when the lender has a lien on PACA trust property or when "there are circumstances such that the person should know that money was derived from the sale of trust property." *Id.* at 793.

As to the first situation, the court referred to the Congressional finding set forth in 7 U.S.C. Section 499e(c)(1) that financing arrangements under which the buyer encumbers its inventory and accounts receivable are a burden on commerce, and to PACA's legislative history, which states that when a bank lends on the security of potential trust assets, the trust provisions of the act would "be known to and considered by prospective lenders in extending credit". *Id.* at 793, quoting H.R. Rep. No. 543, p. 4, reprinted in 1984 U.S. Code Cong. and Admin.News 405, at 407.

---

**3.** Because PACA's trust provisions were modeled on similar provisions in the Packers and Stockyards Act, authority thereunder is persuasive.

See, e.g. *In re Fresh Approach, Inc.*, 51 B.R. 412, 419 (Bky. N.D.Tex. 1985); *In re W.L. Bradley Co., Inc.*, 75 B.R. 505, 509 (Bky. E.D.Pa. 1987).

With reference to the second situation where constructive knowledge should be imputed, the court stated that if

"from facts known to the bank about the affairs of its customers there is a high probability that all or a part of the funds must have come from the proceeds of the sales of property in which a trust was perfected, then the bank must demonstrate the existence of sufficient non-encumbered cash sources before it can retain the money payments." *Id.* at 793.

In applying the foregoing rules to the facts before it, the court granted summary judgment in favor of Trust Company Bank because its loans were not secured by a security interest in trust assets and the bank had no independent knowledge that the proceeds it received were trust assets. As to the Trust Company Bank of Clayton County, the court ruled in favor of the bank in respect of payments it received on two auto loans which were not secured by trust assets, because no showing had been made that the bank knew that the monies it had received were likely derived from trust funds. The court held, however, that the same bank was required to refund monies it had received on its accounts receivable loan because of the statute's express purpose of protecting claimants against the competing claims of secured lenders. 7 U.S.C. Section 499e(c)(1).

Here, application of the principles discussed in *C.H. Robinson Co.* leads the court to conclude that the Bank must refund trust funds of not less than $105,000 and that a genuine issue of material fact exists as to whether the Bank received and must refund all or any portion of the $200,-000 discussed in Mr. Held's declaration. There is no dispute that the monies the Bank received were trust monies and that the bank's advances were secured by accounts receivable of the debtor. There is also no dispute that the Bank knew that the debtor was engaged in the sale of perishable agricultural commodities and that the monies the debtor was owed by Fry's resulted from the sale of such commodities. Nor is it disputed that the amount the debtor owed to PACA trust claimants on February 6, 1989 exceeded the amount of the Fry's receivable and that the debtor was then in default to such claimants.

■ Rather, the only factual defense advanced by the Bank is its ignorance of the existence of PACA. It is clear, however, that the statutory scheme would be defeated if mere ignorance of the existence of PACA were sufficient to defeat the trust rights of the claimants protected thereunder, and the court holds that this is not a valid defense.

## IX. THE BANK'S CLAIM TO THREE PERCENT OF THE IMPOUNDED MONIES

The Bank contends on the basis of the above-mentioned declaration of William G. Schwerin that it is entitled to three percent of the impounded accounts receivable proceeds because based on the debtor's average sales, this amount would not have been derived from the debtor's sale of perishable agricultural commodities. Sunkist opposes the Bank's contention on the ground that the Bank did not specify the time period it used to calculate the debtor's average sales of nonperishable commodities and on the additional ground that nothing before the court shows the amount of the impounded funds which is actually attributable to the sale of non-trust assets. Claimant Buak concurs with Sunkist. TPE has submitted a declaration of Donald Helm wherein Mr. Helm states that based on his review of the debtor's collection data, $10,231.75 is the amount of the impounded funds not attributable to the sale of perishable commodities.

■ The USDA's regulations provide that "[t]rust assets are to be preserved as a nonsegregated 'floating' trust. Commingling of trust assets is contemplated." 7 CFR 46.46(c). Suppliers are not required to trace proceeds. *In re W.L. Bradley Co., Inc.,* 75 B.R. 505, 509 (Bky. E.D.Pa. 1987). The burden is on the party opposing the trust to show the assets, if any, which are not subject to the trust. *C.H. Robinson Co. v. B.H. Produce Co., Inc.,* 723 F.Supp. at 794; *In re Fresh Approach, Inc.,* 51 B.R. at 422.

On the basis of the foregoing principles and the facts which have been presented, the court holds that the sum of $10,231.75 is not subject to a trust claim in favor of the claimants, that a genuine issue of material fact exists as to whether any proceeds in excess of that amount are free of the trust and that the Bank will have the burden of proof on this issue.

## X. ALLEGED FAILURES TO GIVE AND FILE NOTICES

The Bank contends that the following claimants have not furnished evidence that they filed notices with the USDA and sent copies of the notice to the debtor, as required by 7 U.S.C. Section 499e(c)(3): Debruyn, Colvin, TPE, Monterey and Sunkist. The Bank further contends that Mann Packing failed to furnish evidence that it filed a notice with the USDA in respect of its invoice no. 821240.

The document furnished by Mann Packing to establish its USDA filing in respect of this invoice does not contain a stamp confirming the USDA's receipt of the notice. Consequently, a genuine issue of material fact exists as to whether this document was, in fact, filed. The declarations filed by the remaining claimants established that the USDA notices were, in fact, filed, and state that these notices were sent to the debtor. No evidence to the contrary has been furnished by the Bank. Summary judgment on this issue in favor of the claimants is therefore appropriate.

## XI. CONCLUSION

An order of partial summary judgment will issue pursuant to Bankruptcy Rule 7056 in conformity with the conclusions expressed herein.