**In re HOLISTIC SERVICES CORPORATION, Health Hamlet Corporation, Cinagro Farm.Corporation, Vitamin Health Services Corp., Debtors.**

Bankruptcy Nos. 82–00989–BKC–SMW, 82–00987–BKC–SMW, 82–00988–BKC–SMW and 82–00990–BKC–SMW.

United States Bankruptcy Court, S.D. Florida.

March 29, 1983.

---

Raymond B. Ray, Benson, Ray & May, Fort Lauderdale, Fla., for debtor.

Jeffrey H. Beck, English, McCaughan & O'Bryan, Fort Lauderdale, Fla., Ellen Beverley, Katten, Muchin, Zavis, Pearl & Galler, Chicago, Ill., for Health Foods, Inc.

## ORDER ON DEBTOR'S OBJECTION TO CLAIM OF HEALTH FOODS, INC.

SIDNEY M. WEAVER, Bankruptcy Judge.

This matter having come before the Court upon the hearing on the debtor's objection and amended objection to the claim of Health Foods, Inc., claim number 12 in Health Hamlet Corporation, Case No. 82–00987–BKC–SMW, and the Court, having heard the testimony and having examined the evidence presented, observed the demeanor of the witnesses, considered the arguments of counsel and being otherwise fully advised in the premises, the Court does hereby enter the following findings and Order.

## FINDINGS

For a period of time prior to March, 1981, Health Foods, Inc., hereinafter "Health Foods" supplied to debtor and debtor accepted quantities of cosmetics, vitamins and health foods and snacks. Payments were received for such goods that were delivered prior to March, 1981. Health Foods continued to deliver and supply such goods between March, 1981 and August, 1981 to the debtor.

■ The debtor, however, failed to pay for those goods delivered during that latter period and at the time of the filing of the Petition in the within proceeding, the outstanding balance for the goods delivered during that period was $99,288.09. The debtor introduced a cancelled check suggesting that some amount had been paid in reduction of that balance. The debtor did not produce any account payable records or other business records demonstrating the status of the account between the parties. Health Foods, on the other hand, produced invoices and a statement of account and provided testimony to the effect that in the normal course of business and according to standard practices of the Company, the invoices reflecting the above stated indebtedness included credit for all payments made on the account and that such credit would include any payments as were introduced by the debtor. The Court finds that the debtor failed to adduce evidence sufficient to demonstrate that the statement of account produced by the creditor is not a complete and accurate statement of account of the transactions between the parties. Therefore, the Court finds that with the exception of any valid claims or setoffs other than as to the liquidated amount, the indebtedness owed Health Foods at the time of the filing of the Petition, which has not been reduced by any payments since the date of the Petition, is $99,288.09.

■ The debtor introduced further evidence through the testimony of its present and former corporate officers and employees that some or all of the merchandise delivered by the creditor was defective in one or more respects. The evidence presented by the debtor, however, failed to establish the extent of any damaged merchandise delivered. The debtor's chief operating officer testified that he visited several of the stores that were operated by the debtor and that all of the merchandise in those stores was defective. The debtor further presented the testimony of a former corporate officer who indicated that he had visited several stores and found defective merchandise. However, he conceded that some of the merchandise may not have been defective and further that some of it may have been sold.

Each of the witnesses testifying on behalf of the debtor indicated that no record had been prepared or maintained of merchandise which was deemed to be defective. The Court finds that there was insufficient evidence for the Court to draw a conclusion as to the amount of defective merchandise, if any, delivered to the debtor by Health Foods and included amongst the sums due said creditor.

■ Further, the debtor purchased merchandise from the creditor through catalogs furnished by the creditor from time to time in which, both parties conceded, a claims procedure was established regarding defects in merchandise shipped. The debtor conceded that the claims procedure was not followed with respect to the alleged defective merchandise included in the indebtedness owed to Health Foods. With respect to what notice was given by the debtor to the creditor of any defects, the evidence is conflicting.

The only evidence presented by the debtor regarding the giving of any notice of the defective merchandise was the testimony of the chief officer of the debtor. He indicated that he had spoken with two officers of the creditor during the months of June or July of 1981 and that he reported the defective merchandise to these officers at that time. The evidence presented by Health Foods, through the testimony of its officer, Frank Pamper, indicated that one of the two officers to whom this notice was allegedly given had actually left the employ

of the Company in April of 1981 and that the other was a subordinate who would have been charged with the responsibility of reporting to Mr. Pamper any such defect. Mr. Pamper testified that no complaints were reported to him. Further, Mr. Pamper testified that pursuant to the published claims procedure, a claims desk existed and that business records existed to demonstrate whether claims had been made. He testified that he had reviewed same and found that there had been no claims indicated in such records.

Based upon the foregoing, the Court finds that the debtor failed to establish by the greater weight of the evidence that any notice was properly given to Health Foods of any defects in the merchandise until litigation arose between the parties concerning the account indebtedness either in the State Court or here in the Bankruptcy proceeding. The Court finds that a minimum of one year would have passed prior to such notice being given.

■ The Court will examine briefly the controlling legal principles. The burden of proof for the establishment of a claim shifts to the creditor upon objection interposed by the debtor. The creditor in this instance met its burden of proof in establishing a *prima facie* case for the amount of its claim, $99,288.09 through the testimony of its corporate officer and the production of its corporate records concerning the account indebtedness. Thereupon, the burden shifted back to the debtor to establish a defense to said indebtedness.

■ Further, a review of the appropriate provisions of the Uniform Commercial Code as applicable in the State of Florida, which law governs this transaction, demonstrates that the burden of proof under these circumstances in establishing any defect is on the buyer (here the debtor). Section 672.-607(4), Florida Statutes, provides that the burden is on the buyer to establish a breach with respect to goods accepted. Acceptance occurs under Section 672.606, Florida Statutes, when the buyer fails to make an effective rejection after having a reasonable opportunity to inspect the goods. A rejection

of goods under Section 672.602 must be made within a reasonable time and is ineffective unless the buyer notifies the seller, seasonably.

Applying these principles to the instant facts, the Court finds that the debtor accepted the goods shipped by the creditor. The evidence established that the goods were delivered, the debtor had an opportunity to inspect the goods and the debtor failed to notify the seller of any defect within a reasonable time. Having accepted the tender, the burden of proof on establishing any defect was on the debtor pursuant to Section 672.607(4).

■ Further, another consequence flows from a failure of the buyer to notify the seller of any breach. Section 672.607(3)(a) provides that where there has been acceptance of a tender of delivery, the buyer "must within a reasonable time after he discovers or should have discovered any breach notify the seller of the breach *or be barred from any remedy.*" [Emphasis supplied].

Obviously, the purpose and effect of this Commercial Code provision requiring notice is to require that the parties act in a commercially reasonable manner and to make it possible for the seller to exercise his rights under Section 672.508, Florida Statutes, which provides for the seller's right to cure any defect and thereby mitigate damages.

■ The Court finds in the instant case that the debtor accepted the goods, had sufficient time to discover any breach with respect to the goods, and to the extent that there were any defects, failed to notify Health Foods within a reasonable time of any alleged defect. Pursuant to the terms of 672.607(3)(a), Florida Statutes, the debtor is barred from any remedy.

Finally, the Court finds that goods shipped from Health Foods to the debtor were shipped under a contractual arrangement which was created by the supply of catalogs establishing the terms of sale from Health Foods to the debtor. The debtor purchased under these terms and conditions, one of which included a notification

procedure for defects in merchandise. The debtor concedes that it did not comply with this claims procedure.

The Court concludes that the creditor, Health Foods, Inc., established a *prima facie* case for the validity and amount of its claim, $99,288.09. The debtor accepted the merchandise which comprised the basis of this indebtedness. Therefore, the debtor has the burden of proof to establish the existence and amount of defects and to establish that the required notice was given in a reasonable time.

The Court finds that the debtor failed to meet its burden of proof in establishing the amount of any defects and in establishing that appropriate notice was given of these defects to the creditor within a reasonable time. Therefore, Health Foods must prevail.

### ORDER

Upon the preceding findings, it is

ORDERED that claim number 12 in the Health Hamlet Corporation case, Case No. 82–00987–BKC–SMW, being the claim of Health Foods, Inc., be and the same is hereby allowed as a general unsecured claim in the within proceeding in the amount of $99,288.09.