In the Matter of **EAST COAST BROKERS AND PACKERS, INC., Debtor.**

**Bankruptcy No. 89–3831–8B1.**

United States Bankrutcy Court, M.D. Florida, Tampa Division.

Oct. 12, 1990.

**222**

Scott A. Stichter Tampa, Fla., for debtor.

R. Wade Wetherington, Tampa, Fla., for movant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THE MATTER under consideration is a motion for relief from stay and for turnover of property allegedly not part of Debtor's estate filed by Gonzales Packing Company (Gonzales). The motion is based upon rights asserted pursuant to the Perishable Agricultural Commodities Act (PACA). 7 U.S.C. §§ 499a–499s (1988). Gonzales contends it has rights to proceeds from the sale of tomatoes by Debtor pursuant to PACA trust provisions. Further, Gonzales asserts under PACA the proceeds are not part of Debtor's bankruptcy estate.

Gonzales argues upon the shipment of tomatoes to debtor, a trust, consisting of the tomatoes and proceeds from the tomatoes it shipped to Debtor, was created for its benefit. Further, Gonzales asserts it properly preserved its rights in the trust by its Notice of Intent to preserve trust benefits filed with the Secretary of Agriculture. Debtor takes the position Gonzales is not entitled to trust benefits because Gonzales failed to notice debtor of its intent to preserve trust benefits pursuant to Title 7 U.S.C. § 499e(c)(3).

## STATEMENT OF FACTS

East Coast Brokers and Packers, Inc. (Debtor) and Gonzales are in the business of growing, packing and shipping tomatoes. Debtor's business is located in Plant City, Florida and Gonzales' business is located in Gonzales, California. The dispute between the parties centers around 27,200[1] cartons of tomatoes shipped from California to Florida. The tomatoes were transported from California in 17 separate shipments and received by Debtor during the time frame of October 14, 1988 through October 24, 1988.

At trial, Mr. Madonia (president of Debtor) and Madonia, Jr. (son of president) testified upon receipt of the fourth shipment, the quality of Gonzales' tomatoes began to deteriorate. They also testified upon receipt of the first load of bad tomatoes they contacted Rene Calistro (Calistro), a salesman for Gonzales, by phone to report the problems with the tomatoes. According to the Madonias, Calistro instructed them to continue to receive shipments and to sell them for the account of Gonzales. *See generally*, Fla.Stat. § 672.603. This testimony was countered by Tim Horwath (Horwath), a manager at Gonzales. Horwath denied any such instructions were given to Debtor because such instruction would have required his approval, which he did not give.

The Madonias testified Debtor was unable to sell the tomatoes at market price because of the deterioration in the quality of the tomatoes. Gonzales, on the other hand, argues Debtor's inability to sell the tomatoes at the anticipated market price was due to bad business judgement on the part of Debtor (i.e. failure to foresee the decline in the Florida market for California tomatoes) and not because of the quality of the tomatoes.

In any event, as a result of either bad business judgement or rotten tomatoes, Debtor failed to pay for the tomatoes it received from Gonzales. On December 23, 1988, Gonzales filed A Notice of Intention to Preserve Trust Benefits (Notice) with

---

**1.** According to Gonzales the number of cartons shipped was 27,100. Obviously this is a math error. The court calculates 17 shipments of 1600 cartons to equal 27,200 cartons shipped.

the United States Department of Agriculture (USDA). Mr. Madonia and Madonia, Jr. both testified Debtor never received a copy of the Notice filed by Gonzales. The Notice was not sent to Debtor by return receipt requested or by certified mail. The only evidence presented by Gonzales as to the mailing of the Notice to Debtor was the testimony of Horwath. Horwath stated although he did not personally mail the Notice to Debtor, he did instruct his office staff to mail the Notice to Debtor and the Notice would have gone to Debtor in the normal course of business.

In February of 1989, Horwath appeared personally at Debtor's place of business in Plant City and secured a promissory note from Debtor signed by Mr. Madonia. Mr. Madonia also executed a personal guarantee backing the promissory note. Mr. Madonia claims he signed the note and guarantee under duress and therefore both are invalid. The promissory note and guarantee were typed by Debtor's staff although the language in both instruments was provided by a California Grower Association at Gonzales' request. Debtor presented the testimony of an employee as to the circumstances surrounding Horwath's presence at its place of business. The employee described his presence as disruptive to the business operations. The Madonias testified Horwath threatened to put them out of business if the note was not signed. The record does not indicate how Horwath was to accomplish this threat.

Ultimately on June 2, 1989, Debtor filed for protection under Chapter 11 of the Bankruptcy Code. Subsequently, Gonzales filed its motion for relief from the automatic stay and for turnover of property it asserts is not property of the estate. The questions the Court must resolve are 1) whether Debtor properly rejected the tomatoes received from Gonzales; 2) whether Gonzales gave proper notice of intent to preserve PACA trust benefits; 3) whether Gonzales waived its rights to PACA trust benefits by obtaining a promissory note and personal guarantee; and 4) whether Debtor is liable on the promissory note.

## WHETHER DEBTOR PROPERLY REJECTED GOODS

■ Fla.Stat. § 672.602 requires a rejection of goods must be within a "reasonable" time after their delivery and the buyer must "seasonably" notify the seller of the rejection. *See, In re Holistic Services Corp.*, 29 B.R. 509 (Bankr.M.D.Fla.1983). Reasonable time may be fixed by agreement. Fla.Stat. § 671.204. Gonzales' Shipping Orders presented in evidence are stamped with the notation "NO CLAIMS ACCEPTED UNLESS SUPPORTED BY U.S.D.A. INSPECTION WITHIN 24 HOURS AFTER ARRIVAL".[2] No tomatoes were inspected within 24 hours of arrival as required by the Shipping Order. Instead, the Madonia's testified they notified Gonzales by phone of the first load of bad tomatoes received but were enticed into accepting more shipments on the promise of better shipments to come. According to the Madonias, the shipments did not get better in spite of Gonzales' assurances, yet the Madonia's still did not obtain U.S.D.A. inspections within 24 hours of arrival as required by the Shipping Orders.

The Court does not find the testimony of the Madonias credible in light of the fact they continued to accept shipments of allegedly bad tomatoes without obtaining U.S.D.A. inspection as required by the Shipping Orders. Further, considering their testimony as to the poor quality of the tomatoes, it is hard to conceive how someone as experienced in the agriculture business as the Madonias appeared could have continued to accept shipments of tomatoes without taking the necessary precaution of obtaining U.S.D.A. inspections within the required 24 hours in order to protect themselves. The U.S.D.A. inspections were ultimately obtained but it is difficult to discern from the record which shipments were inspected on what day.

---

2. This requirement does not appear to be unreasonable given the nature of perishable goods. In fact, Debtor has a similar requirement printed on its invoices which reads "ANY COMPLAINT MUST BE MADE TO SHIPPER IN WRITING IMMEDIATELY DURING UNLOADING, AND ACCOMPANIED BY U.S.D.A. INSPECTION.

Accordingly, the Court finds Debtor did not properly reject the tomatoes, therefore, Debtor is liable to Gonzales for the agreed price of the tomatoes.

## WHETHER GONZALES IS ENTITLED TO TRUST BENEFITS UNDER THE PERISHABLE AGRICULTURAL COMMODITIES ACT (PACA)

█ Inasmuch as the Court has found Debtor did not properly reject the tomatoes, the Court now addresses whether Gonzales is entitled to trust benefits under the PACA trust provisions. Because of the perishable nature of agricultural goods and because of the long distances often involved in the sale of agriculture, Congress provided a mechanism under which dealers in perishable goods could better conduct business without fear of suffering losses at the hands of irresponsible buyers. *See,* 7 U.S.C.A. § 499e(c). Pursuant to the PACA provisions, a trust, consisting of inventory and proceeds, is created for the benefit of the produce seller upon the transfer of its goods to a broker [buyer]. 7 C.F.R. Part 46. Regarding trust benefits, PACA regulations provide

> When a seller ... transfers ... control of goods to a ... dealer or broker, it automatically becomes eligible to participate in the trust. Participants who preserve their rights to benefits ... remain beneficiaries until they are paid in full.

C.F.R. § 46.46(d)1 Further, as to a participant [seller] perfecting an interest in trust benefits PACA states

> The unpaid supplier, seller, or agent shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of the trust to the [buyer] and has filed such notice with the Secretary [of Agriculture] ...

7 U.S.C. § 499e(c)(3).

█ In order for Gonzales to establish its entitlement to PACA trust benefits, Gonzales must show it properly perfected its benefits by providing Debtor with notice of its intent to preserve benefits under PACA. The importance of determining whether Gonzales provided proper notice is two-fold. First, Gonzales, by giving notice to Debtor, is entitled to trust benefits. Second, if Gonzales is entitled to the trust benefits, those benefits would not be part of Debtor's bankruptcy estate. *See, East Coast Potato Distributors v. Grant (In re Super Spud, Inc.),* 77 B.R. 930, 932 (Bankr.M.D.Fla.1987); *In re Fresh Approach,* 51 B.R. 412, 419 (Bankr.N.D.Tex. 1985). Gonzales would have a superior position compared to other creditors of the bankruptcy estate.

There is a judicial debate over the degree of compliance with PACA trust notice provisions necessary to create an entitlement to the benefits of the trust. Some courts have taken the position strict compliance with the statutory notice provision is required. *See, In re Marvin Properties, Inc.,* 854 F.2d 1183 (9th Cir.1988); *In re D.K.M.B. Inc.,* 95 B.R. 774 (Bankr.Colo. 1989); and *St. Joseph Bank & Trust Co. v. DeBruyn Produce Co. (In re Prange Foods Corp.),* 63 B.R. 211 (Bankr.W.D. Mich.1986). Other courts have taken the position substantial compliance with the notice provision is sufficient to preserve trust benefits. *See, Dubin v. Carlton Fruit Co., Inc. (In re Carlton Fruit Co., Inc.),* 84 B.R. 810 (Bankr.M.D.Fla.1988) (Held PACA trust notice sufficient despite fact that information required by statute was omitted from the notice. The court found information omitted was due to the fault of the [debtor] and not the fault of the seller. The court refused to disallow trust benefits to seller because of debtor's actions preventing seller's compliance.) The case at bar is distinguishable from *Carlton Fruit Co., Inc.* No evidence was introduced to suggest Debtor in any way interfered with Gonzales' efforts to comply with the notice requirements.

The PACA trust provisions were clearly intended to provide an enhanced protection to agriculture sellers. This special protection afforded agricultural sellers by the PACA provisions is incongruous with one of the objectives of the Bankruptcy Code, i.e., to provide equal treatment to similarly situated creditors. It is this tension between the Bankruptcy Code and PACA

which has resulted in courts taking contrary positions regarding the level of compliance necessary to be entitled to PACA trust benefits.[3]

In *Marvin Properties* an agricultural seller sought to enforce a statutory PACA trust on proceeds of goods sold to a bankrupt buyer (debtor). The seller filed a notice of intent to preserve PACA trust benefits with the Secretary of the United States Department of Agriculture (USDA). The seller did not send a copy of the notice to the debtor. USDA sent a letter to the seller acknowledging receipt of the notice and also sent a copy of acknowledgement letter to the debtor. It was undisputed the debtor had actual knowledge of the notice.

The Ninth Circuit Court of Appeals, affirming the Bankruptcy court and the Bankruptcy Appellate Panel, held the seller was not entitled to trust benefits because it had not complied with the statute requiring the seller to give notice directly to the debtor. In its opinion the court stated "[t]he statute [section 499e(c)(3) ] clearly requires the seller to give written notice directly to the buyer." *Id.* at 1186.

In the case at bar, the testimony of Gonzales' witness, Horwath, regarding the mailing of the Notice to Debtor is insufficient to prove Debtor received the Notice. No evidence was presented specifically as to what Gonzales' normal business practice was regarding the mailing of trust notices. Horwath's statement regarding his general instruction to office staff to mail the Notice and his assumption the Notice would have gone out in the ordinary course of business is not adequate to prove the presumption of receipt of the Notice by the Debtor in light of Debtor's Principals' denial of receipt. The Court finds Debtor did not receive Notice from Gonzales as required by PACA.

This Court agrees with the holding of the Ninth Circuit Court of Appeals. The impact of finding a seller is entitled to PACA trust benefits is severe enough to justify strict compliance by the seller. A seller should not be allowed to benefit from a statute, at the expense of other creditors, without having fully complied with the statute. Gonzales did not comply with the requirements of PACA regarding notice to Debtor, therefore it did not properly preserve its rights to trust benefits under the PACA trust provisions. Thus, the proceeds are property of the estate.

Having found Gonzales is not entitled to PACA trust benefits, it is unnecessary for the Court to rule on the issue of whether Gonzales waived its rights to PACA trust benefits by obtaining a promissory note from Debtor.

### WHETHER DEBTOR IS LIABLE ON THE PROMISSORY NOTE

Debtor contends the promissory note is invalid because it was executed under duress. Duress is a defense to a promissory note which Debtor has the burden of proving. *See, City of Miami v. Kory*, 394 So.2d 494 (Fla. 3rd D.C.A.1981) *citing, Herald v. Hardin*, 116 So. 863 (1928); 25 Am.Jur.2d §§ 3, 31. The Court is not persuaded by Mr. Madonia's testimony he signed the promissory note and the guarantee under duress. While Horwath's presence at Debtor's place of business may have been unpleasant, inconvenient, and generally disruptive to the operation of the business, the Court does not find this conduct constitutes conditions of duress. Rather it appears to the Court Mr. Madonia executed the promissory note and guarantee in order to get Horwath out of his hair. It also appears Mr. Madonia had other options rather than executing the promissory note. For instance, he could have called law enforcement to have Horwath physically removed from Debtor's premises.

Debtor's defense to the promissory note is unsupported by the facts, therefore the Court finds Debtor is liable on the promissory note.

Accordingly, it is

---

**3.** *See,* Morad, *Bankruptcy and the Perishable Agricultural Commodities Act Trust,* 7 Bankr.Dev.J. 291 (1990) for a more complete discussion of the interrelationship between PACA and the Bankruptcy Code.

ORDERED, ADJUDGED AND DE-CREED that the motion for relief from stay and for turnover of property is denied without prejudice to allow Gonzales to file its proof of claim.

DONE AND ORDERED.